112 T.C. No. 14


UNITED STATES TAX COURT


JOHN D. SHEA, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 10841-95, 23549-96.        Filed April 1, 1999.


    P and his wife filed joint returns for 1990 and
1991.  P submitted a delinquent return for 1992 that
was filed as a joint return.  R determined that P
underreported business receipts for 1990, 1991, and
1992 based on deposits to P's bank accounts and also
disallowed business deductions claimed on P's returns.
In the notice of deficiency for 1992, R determined that
P's proper filing status for 1992 was married filing
separately.

    Even though P and his wife remained married
throughout 1992, R did not allocate one-half of P's
income for 1992 to P's wife pursuant to California
community property law.  Sec. 66(b), I.R.C., authorizes
R to disallow the benefits of any community property
law to P if P acted as if he were solely entitled to
the income in question and failed to notify his wife of
the nature and amount of such income.  On brief, R
relies exclusively on sec. 66(b), I.R.C., as
justification for denying the benefits of community
property law to P.  However, R's notice of deficiency
contained no reference to sec. 66(b), I.R.C., nor did
it refer to any facts that would support a sec. 66(b),

I.R.C., determination. A determination of whether or not sec. 66(b), I.R.C., applies requires the presentation of different evidence than that necessary to decide the matters described in the notice of deficiency.

Held: R's determinations of additional gross receipts and disallowance of deductions are, with certain modifications, upheld.

Held, further: Sec. 7522, I.R.C., requires that a notice of deficiency contain a description of the basis for the Commissioner's tax determination. Where R relies on a basis that was not described in the notice of deficiency that requires the presentation of different evidence, it is "new matter" within the meaning of Rule 142(a), Tax Court Rules of Practice and Procedure. If the new matter is allowed to be raised, Rule 142(a), Tax Court Rules of Practice and Procedure, requires that R bear the burden of proof. The burden of proof regarding application of sec. 66(b), I.R.C., is on R. R failed to meet this burden; therefore, P is entitled to the benefits of California's community property law for the taxable year 1992.

David M. Kirsch, for petitioner.

Dale A. Zusi, for respondent.

OPINION

RUWE, Judge: Respondent determined deficiencies in petitioner's Federal income taxes, an addition to tax, and accuracy-related penalties as follows:

| Year | Deficiency | Addition to Tax Sec. 6651(a)(1) | Accuracy-related Penalty Sec. 6662(a) |
|------|-----------|----------------------------------|----------------------------------------|
| 1990 | $155,096  | --       | $31,019 |
| 1991 | 165,529   | --       | 33,106  |
| 1992 | 138,529   | $34,632  | 27,706  |

Respondent determined that petitioner substantially underreported gross receipts during the years in issue based on deposits made to petitioner's bank accounts. After concessions, the issues for decision are whether petitioner has substantiated business deductions claimed on his 1990, 1991, and 1992 Federal income tax returns and whether petitioner is entitled to the benefit of California's community property law in calculating his 1992 income tax liability.[1] In order to decide the second issue, we must determine whether respondent's reliance on section 66(b)[2] to disregard the community property law of California raises a "new matter" on which respondent bears the burden of proof and, if so, whether respondent has met that burden.

Some of the facts have been stipulated and are so found. The first, second, third, and fourth stipulations of fact are incorporated herein by this reference. Petitioner's legal residence was in Campbell, California, at the time he filed his petitions. For convenience, we will combine our findings of fact with our opinion.

---

[1]Petitioner does not dispute that the addition to tax and accuracy-related penalties apply to the deficiencies that result from this opinion.

[2]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

In each of the years in issue, petitioner was married to
Flor Shea.  Petitioner and Mrs. Shea were divorced in 1993.
Petitioner filed timely joint returns with Mrs. Shea in 1990 and
1991.  Petitioner's 1992 return was filed on March 31, 1995, as a
joint return.  In the notice of deficiency for 1992, respondent
determined that petitioner's correct filing status was married
filing separately.  The notice also contains various
consequential adjustments.  The parties now agree that married
filing separately is the correct 1992 filing status for
petitioner.

In each of the years in issue, petitioner was the owner and
operator of an unincorporated consulting business known as Shea
Technology Group, hereafter referred to as STG.  Petitioner
reported income and deductions from this business on Schedule C,
Profit or Loss From Business, in each of the years in issue.  The
parties now agree that petitioner underreported STG's gross
business receipts by $216,143 in 1990, $208,134 in 1991, and
$272,902 in 1992.[3]

---

[3]Respondent proposed that we find these unreported gross
receipt figures, and petitioner indicated that he did not object.
In respondent's reply brief, he states that the total amount of
unreported gross receipts for 1992 is $274,902.  We will use the
lower figure to which the parties have agreed.

Petitioner also bought, sold, and traded military memorabilia. Petitioner did not report this activity on his 1990, 1991, or 1992 returns.

A. Schedule C Deductions

In the notices of deficiency for the years 1990, 1991, and 1992, respondent disallowed all petitioner's Schedule C deductions. Respondent now concedes certain of these deductions.[4] We must decide which, if any, of the remaining deductions claimed by petitioner are allowable.

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving that they are entitled to any deductions claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain sufficient records to enable the Commissioner to determine their correct tax liability. Sec. 6001.

Section 162 generally allows a deduction for all the ordinary and necessary expenses paid or incurred during the

---

[4]Respondent concedes: Air phone charges of $89 in 1990, $247 in 1991, and $1,808 in 1992; office rent of $25,050 in 1990 and $25,000 in 1991; postage and secretarial services of $1,880 in both 1990 and 1991; office expenses of $951.34 in 1990; and printing expenses of $20,595 in 1990 and $5,424 in 1991. The total deductions conceded by respondent are $48,565.34 in 1990, $32,551.00 in 1991, and $1,808.00 in 1992.

taxable year in carrying on any trade or business. Such expenses must be directly connected with or pertain to the taxpayer's trade or business. Sec. 1.162-1(a), Income Tax Regs. The determination of whether an expenditure satisfies the requirements of section 162 is a question of fact. Commissioner v. Heininger, 320 U.S. 467, 475 (1943).

Section 162(a)(2) allows a deduction for all the ordinary and necessary traveling expenses, including meals, paid by a taxpayer during the taxable year while traveling away from home in the pursuit of a trade or business. A travel or entertainment deduction is disallowed if the taxpayer does not satisfy the substantiation requirements of section 274(d)[5] through either

---

[5]Sec. 274(d) provides:

    (d)Substantiation Required.--No deduction or credit shall be allowed--

        (1) under section 162 or 212 for any traveling expense (including meals and lodging while away from home),

        (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity,

        (3) for any expense for gifts, or

        (4) with respect to any listed property (as defined in section 280F(d)(4)),

    unless the taxpayer substantiates by adequate records
                                                    (continued...)

adequate records or the taxpayer's own detailed statement that is corroborated by sufficient evidence.  Section 274(d) also applies to listed property, which includes any passenger automobile. Secs. 274(d)(4), 280F(d)(4)(A)(i).  At a minimum, the taxpayer must substantiate:  (1) The amount of the expense, (2) the time and place such expense was incurred, (3) the business purpose of the expense, and (4) the business relationship to the taxpayer of persons entertained.  Sec. 274(d).

The regulations further clarify the stringent substantiation requirements of section 274.  A taxpayer generally must substantiate each expenditure by producing (1) adequate records or (2) sufficient evidence to corroborate his or her own statement.  Sec. 1.274-5T(c)(1), Temporary Income Tax Regs., 50 Fed. Reg. 46016-46017 (Nov. 6, 1985).  The "adequate records" standard requires that a taxpayer maintain an account book,

---

[5](...continued)
or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift.  The Secretary may by regulations provide that some or all of the requirements of the preceding sentence shall not apply in the case of an expense which does not exceed an amount prescribed pursuant to such regulations.  This subsection shall not apply to any qualified nonpersonal use vehicle (as defined in subsection (i)).

diary, log, statement of expense, or other similar record in which entries of expenditures are recorded at or near the time of the expenditure. In addition, a taxpayer must supply documentary evidence, such as receipts or paid bills. Sec. 1.274-5T(c)(2)(i) to (iii), Temporary Income Tax Regs., 50 Fed. Reg. 46017-46020 (Nov. 6, 1985). Alternatively, taxpayers who are unable to satisfy the adequate records requirement are still entitled to a deduction for expenses that they can substantiate with other corroborative evidence. Sec. 1.274-5T(c)(3), Temporary Income Tax Regs., 50 Fed. Reg. 46020-46021 (Nov. 6, 1985).

For expenses other than those covered by the provisions of section 274(d), if the taxpayer failed to keep adequate records but the Court is convinced that deductible expenditures were incurred, the Court "should make as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). However, we must have some rational basis on which an estimate may be made. Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985).

Petitioner deducted Schedule C business expenses totaling $162,278 in 1990, $192,516 in 1991, and $211,709 in 1992.[6] These deductions fall into two categories. One category must meet the

_____

[6]See appendix.

substantial and stringent requirements of section 274(d). The other category consists of all the other claimed deductions.

Regarding the deductions governed by section 274, respondent has conceded some items of expense, and petitioner has conceded that the air travel expenses in all the years in issue cannot be adequately substantiated. Petitioner has put forward no believable explanation for the absence of required records; consequently, the burden of his inexactitude must fall on him. Petitioner did not produce any witnesses to corroborate when and where he traveled on business. Mrs. Shea could testify only to the fact that petitioner was not home and that petitioner said he was traveling on business. While it is likely that some of petitioner's travel was business related, we have insufficient information to allow any deductions given the strict standards set by section 274. Petitioner's claims for deductions relating to meals away from home and lodging expenses fail for the same reasons that the airline travel expenses fail. The other claimed deductions subject to section 274(d), including passenger auto expense and entertainment, are likewise unsubstantiated. Petitioner did not keep a contemporaneous trip diary to record business miles traveled in his personal vehicle and did not maintain a record of the parties entertained or the business purpose. We, consequently, uphold respondent's disallowance of

these items as not complying with the statutory requirements of section 274.

As to the remaining items, we find that petitioner paid and is entitled to a deduction for telephone expenses in the amounts of $7,735 for 1990 and $6,616 for 1991, in addition to the items respondent has conceded. With respect to the other claimed deductions, the only documents presented to substantiate petitioner's claimed business expenses were credit card summaries, charge slips showing various purchases, and a crude ledger for 1990, which appears to have been prepared from canceled checks. These credit card summaries contain personal expenses,[7] what appears to be military memorabilia-related expenses, and what purports to be business expenses. Other than the credit card summaries and petitioner's less then credible, vague, and self-serving testimony, there is no corroborative evidence of the business purpose of these expenses. As we have stated many times before, this Court is not bound to accept a taxpayer's self-serving, unverified, and undocumented testimony. Tokarski v. Commissioner 87 T.C. 74, 77 (1986). While there are undoubtedly business expenses contained within the credit card

---

[7]For example, airfares for family members and third parties not employees of STG, a limousine rental for petitioner's daughter who was not an employee, items noted as apparel and accessories, leather goods and accessories, fine art and frames, and jewelry and gifts.

summaries, we cannot in most instances determine which expenses relate to the military memorabilia activity,[8] are personal expenses, or are truly business expenses.  Except as noted above, petitioner has produced insufficient evidence to persuade us that respondent's disallowance of the deductions reported in Schedules C of the returns is in error.  Consequently, with the exceptions noted above, we uphold respondent's disallowance of deductions.

Based on the foregoing, we find that the net profit from petitioner's consulting business was $336,231.66 in 1990, $356,394.00 in 1991, and $443,172.00 in 1992.[9]

---

[8]We are unable to determine the exact magnitude of petitioner's military memorabilia activity, but it appears to be quite extensive.  During the examination, petitioner or his agent provided a document in the form of a ledger.  The ledger appears to show six transactions in 1990 for amounts of $46,836, $4,400, $27,755, $8,084, $64,874, and $20,100 that relate to petitioner's military memorabilia activity.

[9]The net profit was calculated as follows:

|                      | 1990         | 1991         | 1992         |
|----------------------|--------------|--------------|--------------|
| Reported receipts    | $176,389.00  | $187,427.00  | $172,078.00  |
| Unreported receipts  | 216,143.00   | 208,134.00   | 272,902.00   |

(continued...)

B.  Application of Community Property Law in 1992

Petitioner's 1992 return was filed as a joint return.  In the notice of deficiency, respondent changed petitioner's filing status from married filing jointly to married filing separately. Nevertheless, respondent determined petitioner's unreported income without making any adjustment for California's community property law.  The notice of deficiency does not refer to California community property law, any exceptions to such law, or any facts that might support such exceptions.

Married persons who reside in a community property State are generally each required to report one-half of their community income for Federal income tax purposes.  United States v. Mitchell, 403 U.S. 190 (1971); Drummer v. Commissioner, T.C. Memo. 1994-214, affd. without published opinion 68 F.3d 472 (5th Cir. 1995).  Petitioner contends that under California law, the 1992 income generated by petitioner's consulting business is community income and that he is required to report and be taxed

---

[9](...continued)

| | | | |
|---|---|---|---|
| Less: | | | |
| Conceded deductions | 48,565.34 | 32,551.00 | 1,808.00 |
| Additional allowable deductions | 7,735.00 | 6,616.00 | 0.00 |
| | ———— | ———— | ———— |
| Net profit | 336,231.66 | 356,394.00 | 443,172.00 |

on only one-half of that community income for Federal tax purposes.

Respondent now recognizes that all of STG's income is community income under California law. Respondent also stipulated that $119,204 of STG's net profit for 1992, the amount which was transferred to petitioner's and Mrs. Shea's household checking account in 1992, was community income reportable by each spouse in the amount of $59,602. The parties dispute whether STG's 1992 net profit in excess of $119,204 should all be attributed to petitioner, regardless of community property law. On brief, respondent relies solely on the provisions of section 66(b) to deny petitioner the income-splitting benefits of California's community property law. Section 66(b) provides:

> The Secretary may disallow the benefits of any community property law to any taxpayer with respect to any income if such taxpayer acted as if solely entitled to such income and failed to notify the taxpayer's spouse before the due date (including extensions) for filing the return for the taxable year in which the income was derived of the nature and amount of such income.

Petitioner acknowledges that section 66(b) authorizes the Commissioner to disallow the benefits of any community property law to a taxpayer with respect to any income if (1) the taxpayer acted as if he were solely entitled to such income, and (2) the taxpayer failed to notify the taxpayer's spouse of the nature and

amount of such income before the due date for filing the return. See <u>Mischel v. Commissioner</u>, T.C. Memo. 1997-350; <u>Schramm v. Commissioner</u>, T.C. Memo. 1991-523, affd. without published opinion 988 F.2d 121 (9th Cir. 1993). However, petitioner contends that respondent made no determination in the notice of deficiency to disallow the benefits of community property law pursuant to section 66(b), that respondent's reliance on section 66(b) is a "new matter" within the meaning of Rule 142(a),[10] and that respondent must bear the burden of proving that section 66(b) applies.[11]

When the Commissioner attempts to rely on a basis that is beyond the scope of the original deficiency determination, the Commissioner must generally assume the burden of proof as to the new matter. A substantial body of case law has developed in this

---

[10]Rule 142 provides:

(a) General: The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent. As to affirmative defenses, see Rule 39.

[11]Petitioner does not contend that respondent should be precluded from relying on sec. 66(b). Petitioner was on notice before trial that respondent would rely on sec. 66(b). The sec. 66(b) issue was tried by consent of the parties and is properly before the Court. See Rule 41(b). Petitioner's only requested relief is that respondent bear the burden of proof regarding this issue.

Court setting forth criteria for determining when the Commissioner is raising a "new matter".  A synopsis of these criteria is as follows:

> A new theory that is presented to sustain a deficiency is treated as a new matter when it either alters the original deficiency or requires the presentation of different evidence.  * * *  A new theory which merely clarifies or develops the original determination is not a new matter in respect of which respondent bears the burden of proof.  * * * [Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. 500, 507 (1989); citations omitted.[12]]

Here, the relevant issues raised by respondent's notice of deficiency are the total amount of business gross receipts and whether petitioner is entitled to deductions that he claimed were incurred in his business during 1992.  The only explanation stated in the notice of deficiency for increasing 1992 gross receipts is that the adjustment was based on bank deposits.  All these deposits were to the business account used for petitioner's consulting business.  The only reason for disallowing business deductions was that petitioner had not substantiated their deductibility.

---

[12]See also Colonnade Condominium, Inc. v. Commissioner, 91 T.C. 793, 795 n.3 (1988); Achiro v. Commissioner, 77 T.C. 881, 890-891 (1981); Estate of Jayne v. Commissioner, 61 T.C. 744, 748-749 (1974); McSpadden v. Commissioner, 50 T.C. 478, 492-493 (1968).

Respondent now acknowledges that petitioner is entitled to the benefits of community property law, unless those benefits can be disallowed pursuant to section 66(b). Respondent argues that invocation of section 66(b) is necessarily implicit in the notice of deficiency. We disagree. The notice of deficiency makes absolutely no mention of community property law, section 66(b), or facts which would allow respondent to invoke section 66(b). In the notice of deficiency, respondent determined that all of Mrs. Shea's 1992 wage income was her separate income without regard to community property law. Respondent also treated interest on petitioner's and Mrs. Shea's joint bank account as the separate income of petitioner without regard to community property law. And, as previously mentioned, the notice of deficiency contains no adjustment for the $119,204 that was transferred from the business account to petitioner's and Mrs. Shea's household checking account during 1992.[13]

Respondent failed to offer any evidence that indicated that respondent considered the application of community property law or section 66(b) in making his determination.[14] In short, it

---

[13]As previously noted, respondent now acknowledges that petitioner is entitled to the benefits of community property law with respect to $119,204 of the 1992 STG net profit, regardless of whether sec. 66(b) is otherwise applicable.

[14]Attached to petitioner's Motion to Shift Burden of Proof is what purports to be a copy of the revenue agent's report for
(continued...)

appears to us that respondent gave no thought to community property law or section 66(b) when the notice of deficiency was prepared.[15]  Respondent's apparent failure to even consider community property law, or section 66(b) in making his deficiency determination supports our conclusion that section 66(b) was not implicit in the notice of deficiency.  However, even if respondent's agents had considered such matters, it does not follow that they were "necessarily implicit" in the notice of deficiency.  The objective language in the notice of deficiency remains the controlling factor.  As indicated in the preceding paragraph, there is nothing in the notice of deficiency that makes section 66(b) "necessarily implicit".

The factual basis required to establish whether STG's income was understated is different from the factual basis necessary to establish whether community property law or section 66(b) applies.  The facts necessary for a determination of income

---

[14](...continued)
petitioner's 1992 taxable year.  Petitioner alleged, and the attached revenue agent's report shows, that the revenue agent computed the 1992 deficiency based on joint filing status as opposed to the married filing separate status used in the notice of deficiency.  We also note that the notice of deficiency for 1992 was addressed to "John D. and Flora [sic] M. Shea," even though the attached schedules reflect tax liability for only John D. Shea.

[15]At trial, respondent's counsel could not clarify this point other than to state:  "I think it was done pursuant to 66(b), although 66(b) I concede is not mentioned in the stat notice."

pursuant to a bank deposits analysis would require evidence of deposits and an identification of which deposits should be excluded from income. Business deductions are allowed or disallowed based on whether they can be substantiated.

Generally, the only evidence necessary to establish that income is community income is that the income was received by either spouse during the marriage while domiciled in a community property State. As we have recently stated:

> The term "community property", pursuant to California law, is generally defined as "property acquired by husband and wife, or either, during marriage, when not acquired as the separate property of either." Under California law, absent a contrary agreement, each spouse has the right to one half of all community income from the moment it is acquired and therefore is liable for the Federal income tax on one half of such amount.
>
> The character of property as separate or community is determined at the time of acquisition. Property acquired by purchase after marriage is presumed to be community property. Furthermore, earnings of a husband acquired during marriage are presumed to be community property. With respect to unearned income, where the source property is presumed to be community property, and no evidence is introduced to rebut such presumption, then the income from such property is presumed community income. Under California law, the burden of proving that property is separate rests on the party making such assertion. [Webb v. Commissioner, T.C. Memo. 1996-550; citations omitted.]

On the other hand, whether respondent may apply section 66(b) and disregard community property law in determining petitioner's income requires evidence of whether petitioner acted

as if he were solely entitled to the income and whether he failed to notify his wife of the nature and amount of that income.  See Mischel v. Commissioner, T.C. Memo. 1997-350.  Based on our previously articulated test for determining whether respondent's reliance on section 66(b) is new matter, we would hold that it is and that the burden of proof as to that issue should be on respondent.

However, on brief respondent relies on Abatti v. Commissioner, 644 F.2d 1385 (9th Cir. 1981), revg. T.C. Memo. 1978-392.[16]  Based on Abatti, respondent argues that the proper test for determining whether respondent has introduced a "new matter" on which he bears the burden of proof depends on whether the basis for the deficiency advanced at trial or in an amended answer is "inconsistent" with the language contained in the notice of deficiency.  Based on Abatti, respondent asserts that if a notice of deficiency is broadly worded and the Commissioner later advances a theory that is "not inconsistent" with that language, the theory does not constitute a new matter, and the burden of proof remains with the taxpayer.

In Abatti v. Commissioner, supra, the Court of Appeals for the Ninth Circuit characterized the notice of deficiency as a notice that "informed the taxpayers that there were deficiencies

---

[16]The Court of Appeals for the Ninth Circuit is the court to which this case is appealable.

and the amount of them but contained no explanation".  Id. at

1389.  The Court of Appeals for the Ninth Circuit then stated:


> This type of notice is sufficient to raise the
> presumption of correctness and to place the burden of
> proof on the taxpayer.  Barnes v. CIR, 408 F.2d 65 (7th
> Cir.), cert. denied,  396 U.S. 836, 90 S.Ct. 94, 24
> L.Ed.2d 86 (1969).  Judge Hand, in Olsen v. Helvering,
> supra, stated, "the notice is only to advise the person
> who is to pay the deficiency that the Commissioner
> means to assess him; anything that does this
> unequivocally is good enough."  [Id. at 1389-1390
> citation omitted.]


The court went on to state:


> In fact, if a deficiency notice is broadly worded and
> the Commissioner later advances a theory not
> inconsistent with that language, the theory does not
> constitute new matter, and the burden of proof remains
> with the taxpayer.  [Id. at 1390.]


We have recognized that the above-quoted language from Abatti v.

Commissioner, supra, may represent a standard for determining

what constitutes a "new matter" that is at variance with the

current standard articulated by this Court.  See Achiro v.

Commissioner, 77 T.C. 881, 890-891 (1981);[17] Yamaha Motor Corp.,

---

[17]In Achiro v. Commissioner, 77 T.C. at 891, we stated:

if respondent does not indicate in the notice of
deficiency that he is relying on section 482, but
alerts the taxpayer of his reliance on section 482
formally in pleadings far enough in advance of trial so
as not to prejudice the taxpayer or take him by
surprise at trial, then the burden of proof shifts to
(continued...)

U.S.A. v. Commissioner, T.C. Memo. 1992-110; National Semiconductor Corp. & Consol. Subs. v. Commissioner, T.C. Memo. 1991-81; Perryman v. Commissioner, T.C. Memo. 1988-378, affd. without published opinion 920 F.2d 936 (9th Cir. 1990).[18]

Petitioner acknowledges that the Court of Appeals' opinion in Abatti v. Commissioner, supra, contains broad language but argues that the subsequent enactment of section 7522 abrogated that broad language by requiring specificity in respondent's notices of deficiency. Section 7522, which was applicable to the notice of deficiency in this case,[19] provides:

SEC. 7522. CONTENT OF TAX DUE, DEFICIENCY, AND OTHER NOTICES.

---

[17](...continued)
respondent to establish all the elements necessary to support his allocation under section 482. See Rubin v. Commissioner, 56 T.C. 1155, 1162-1164 (1971), affd. 460 F.2d 1216 (2d Cir. 1972); Rule 142(a), Tax Court Rules of Practice and Procedure. But see Abatti v. Commissioner, 644 F.2d 1385 (9th Cir. 1981), revg. a Memorandum Opinion of this Court.

[18]In Perryman v. Commissioner, supra, appellate venue was in the Ninth Circuit Court of Appeals which had decided Abatti v. Commissioner, 644 F.2d 1385 (9th Cir. 1981), revg. T.C. Memo. 1978-392. In Perryman, we held:

Despite our holding in Achiro, however, we will follow the precedent established in the court to which an appeal would lie. See Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1974). Appeal in this case would lie in the Ninth Circuit.

[19]Sec. 7522 is applicable to notices of deficiency issued after Jan. 1, 1990.

- 22 -

(a)  General Rule.--Any notice to which this section applies <u>shall describe the basis for</u>, and identify the amounts (if any) of, the tax due, interest, additional amounts, additions to the tax, and assessable penalties included in such notice.  An inadequate description under the preceding sentence shall not invalidate such notice.

(b)  Notices to Which Section Applies.--This section shall apply to--

(1) any tax due notice or deficiency notice described in section 6155, 6212, or 6303,

(2) any notice generated out of any information return matching program, and

(3) the 1st letter of proposed deficiency which allows the taxpayer an opportunity for administrative review in the Internal Revenue Service Office of Appeals.  [Emphasis added.]

Congress enacted section 7522 with the expectation that the IRS would "make every effort to improve the clarity of all notices * * * that are sent to taxpayers."  H. Conf. Rept. 100-1104, at 219 (1988), 1988-3 C.B. 473, 709.  Petitioner argues that respondent's failure to state specifically that petitioner was being denied the benefits of community property law or to describe a basis for denying petitioner the benefits of community property law violates section 7522 and warrants treating the section 66(b) issue as a new matter on which respondent bears the burden of proof.

Respondent argues that there was no violation of section 7522 because reliance on section 66 was "implicit" in the notice

of deficiency.  As we have previously indicated, we do not believe that section 66(b) was implicit or even considered in making the adjustments contained in the notice of deficiency.  It is a closer call to say whether reliance on section 66(b) is "inconsistent" with the language in the notice of deficiency.  In the final analysis, we think that section 7522 makes the question of whether reliance on section 66(b) is, or is not, "inconsistent" with the notice of deficiency irrelevant, if the basis on which respondent relies was not described in the notice of deficiency and requires different evidence.

Section 7522, which was enacted after the Abatti decision, requires that a notice of deficiency "describe the basis" for the tax deficiency.[20]  Section 7522 makes no exception for a basis

---

[20]Sec. 7522 does not articulate specific standards for determining whether the description of the Commissioner's basis is adequate, nor does it provide any statutory remedy or sanction. The only reference in sec. 7522(a) to a failure to abide by its provisions provides:  "An inadequate description under the preceding sentence shall not invalidate such notice." We view this provision as referring only to the "validity" of the notice of deficiency for jurisdictional purposes.  As the Court of Appeals for the Ninth Circuit has stated:

> The Tax Court has jurisdiction only when the Commissioner issues a valid deficiency notice, and the taxpayer files a timely petition for redetermination. "A valid petition is the basis of the Tax Court's jurisdiction.  To be valid, a petition must be filed from a valid statutory notice."  Stamm International Corp. v. Commissioner, 84 T.C. 248, 252 (1985).  See Midland Mortgage Co. v. Commissioner, 73 T.C. 902, 907
>                                       (continued...)

that is "not inconsistent" with the language in the notice of deficiency. Indeed, were such an exception available, the Commissioner would be free to raise new theories that would require different evidence so long as the new theories were not inconsistent with the language in the notice of deficiency. Such a result would significantly dilute the legislative mandate of section 7522.

Generally, the Commissioner's determination in a notice of deficiency is presumed correct. The purpose of section 7522 is to give the taxpayer notice of the Commissioner's basis for determining a deficiency. A taxpayer is given 90 days from the day the notice of deficiency is mailed in which to file a petition with the Tax Court. Sec. 6213(a). Rule 34(b) sets forth what is required to be included in a petition. Among its requirements are that the petition shall contain:

> (4) Clear and concise assignments of each and every error which the petitioner alleges to have been committed by the Commissioner in the determination of the deficiency or liability. The assignments of error shall include issues in respect of which the burden of proof is on the Commissioner. Any issue not raised in the assignment of error shall be deemed to be conceded. Each assignment of error shall be separately lettered.

---

[20](...continued)
(1980). [Scar v. Commissioner, 814 F.2d 1363, 1366 (9th Cir. 1987), revg. on other grounds 81 T.C. 855 (1983); emphasis added.]

(5) Clear and concise lettered statements of the facts on which petitioner bases the assignments of error, except with respect to those assignments of error as to which the burden of proof is on the Commissioner.  [Rule 34(b).]

Without notice of the Commissioner's basis for a determination of deficiency, it would be difficult, if not impossible, to comply with Rule 34(b).

We have previously held that new matter is raised when the basis or theory on which the Commissioner relies was not stated or described in the notice of deficiency and the new theory or basis requires the presentation of different evidence.  Wayne Bolt & Nut Co. v. Commissioner, 93 T.C. at 507.  This rule for determining whether a new matter has been raised by the Commissioner is consistent with, and supported by, the statutory requirement that the notice of deficiency "describe the basis" for the Commissioner's determination.  This rule also provides a reasonable method for enforcing the requirements of section 7522.[21]

In the instant case, the notice of deficiency does not describe section 66(b) as respondent's basis for disallowing the

---

[21]On brief, respondent declined to address what the consequences, if any, would be if we were to find that respondent was attempting to rely on a basis that he failed to describe in the notice of deficiency as required by sec. 7522.  However, in Straight v. Commissioner, T.C. Memo. 1997-569, respondent conceded that placing the burden of proof on respondent may be proper where the notice of deficiency violates sec. 7522.

benefits of community property law to petitioner, and different evidence will be necessary to resolve the section 66(b) issue. Under these circumstances, treating the section 66(b) issue as a new matter upon which respondent has the burden of proof is both consistent with our prior practice and supported by the statutory requirements of section 7522.[22]  We, therefore, hold that where a notice of deficiency fails to describe the basis on which the Commissioner relies to support a deficiency determination and that basis requires the presentation of evidence that is different than that which would be necessary to resolve the determinations that were described in the notice of deficiency, the Commissioner will bear the burden of proof regarding the new basis.  To hold otherwise would ignore the mandate of section 7522 and Rule 142(a).  Respondent must therefore bear the burden of proof regarding application of section 66(b).

Respondent argues that he has met that burden and that the following facts demonstrate that petitioner treated the income as if he were solely entitled to it: (a) Gross receipts were

---

[22]Placement of the burden of proof affects only the obligation to prove facts.  If a new theory or basis is completely dependent upon the same evidence required by the basis described in the notice of deficiency, there would normally be little practical reason to shift the burden of proof.  The taxpayer would not suffer from lack of notice concerning what facts must be established.  Indeed, in that situation, the new theory would be a purely legal as opposed to a factual issue. The burden of proof does not affect the Court's determination of what the law is.

separately deposited into an account styled in the business name; (b) not all the net business income was deposited into the joint household account; (c) Mrs. Shea did not have signing authority, access, or knowledge of the specific transactions in the business account; and (d) Mrs. Shea did not involve herself in the business and did not know the extent of the gross income or the extent of the unreported income of the business.

The facts on which respondent relies, either taken alone or taken together, do not justify the conclusion that petitioner acted as if he were solely entitled to business income. The fact that business gross receipts are deposited into a business account is in accordance with normal business practice. Mrs. Shea was clearly aware of the existence of petitioner's business and its bank account. The fact that not all the business income was deposited into the household account is, of itself, unremarkable. We would not find it at all unusual if less than the net profit was so deposited. The fact that Mrs. Shea did not have signing authority over the business account is likewise unremarkable given the fact that she had little day-to-day involvement in the operation of the business. Finally, the fact that Mrs. Shea did not know the extent of business income is not proof that petitioner was acting as if he were solely entitled to the income. Without more, it does not support respondent's allegation that the income was "hidden" from her.

Respondent now concedes that some of the business profits were used to support the Shea family and that in excess of $119,000 was deposited into the "household account". Respondent disallowed deductions for some expenditures from the business account because he determined that these expenditures were personal expenses of the Shea family not properly deductible as business expenses. But this position supports petitioner's argument that profits were used to pay community debts. Respondent points out in arguing for disallowance of claimed business deductions that Mrs. Shea directly benefited from some of these expenditures. Indeed, our findings which sustain respondent's disallowance of claimed business deductions were in part based on respondent's analysis indicating that some of the expenditures from that business account, which were claimed as business deductions, were apparently spent for personal expenses of the Shea family. Examples of such expenditures from the business account in 1992 include the purchase of airline tickets for Mrs. Shea, B. Alvarez, Margreite Alvarez, and Trudy Daly.[23] Also, in disallowing petitioner's claimed business deductions for 1992, we noted the possibility that some of them might have been

---

[23]The Shea family took a vacation cruise on the Regal Princess from Dec. 29, 1991, to Jan. 4, 1992. On Dec. 28, 1991, petitioner stayed in Fort Lauderdale, Florida. Mrs. Shea's airline ticket from San Jose to Fort Lauderdale purchased on Dec. 27, 1991, was deducted as a business expense.

business expenditures for which petitioner failed to provide adequate substantiation. But the fact that petitioner failed to meet his burden of proof regarding the deductibility of these expenses is not sufficient to justify a finding that respondent has met his burden of proving that petitioner treated the income deposited in the business bank account as if he were solely entitled to it.

The facts on which respondent relies establish only that Mrs. Shea had little meaningful involvement in petitioner's business activities and that petitioner underreported the income of that business. These facts are insufficient to prove that petitioner acted as if he were solely entitled to STG's 1992 income. As a result, there is no factual basis to justify respondent's invocation of section 66(b). We, therefore, hold that petitioner is entitled to the benefits of California community property law with respect to the net income of his consulting business as redetermined.

Decision will be entered

under Rule 155.

Reviewed by the Court.

COHEN, JACOBS, GERBER, PARR, WELLS, COLVIN, BEGHE, LARO, FOLEY, VASQUEZ, and GALE, JJ., agree with this majority opinion.

THORNTON and MARVEL, JJ., concur in the result only.

Appendix
Expense Items Claimed on Schedule C

| | 1990 | 1991 | 1992 |
|---|---|---|---|
| Expenses subject to sec. 274(d): | | | |
| Car and truck expenses | $2,615 | $2,870 | -- |
| Air travel | 29,760 | 59,785 | [1]$104,340 |
| Meals away from home | 5,743 | 2,890 | [2]12,481 |
| Entertainment | 2,634 | 462 | -- |
| Lodging | 15,131 | 12,366 | -- |
| Other expenses: | | | |
| Car rental[3] | 11,941 | 13,136 | -- |
| Depreciation | 5,314 | 5,806 | 6,652 |
| Insurance | 9,904 | 9,433 | -- |
| Office expense | 4,198 | 11,120 | 15,696 |
| Legal and professional services | 1,400 | 5,964 | 10,772 |
| Rent or lease | | | |
| a. vehicles, machinery, and equipment | 26,200 | 11,200 | -- |
| b. other business property | -- | -- | 14,325 |
| Repairs and maintenance | 2,064 | 4,903 | -- |
| Trade shows | 841 | 3,460 | 3,690 |
| Research | 5,118 | 22,287 | 4,701 |
| Parking | 415 | 420 | -- |
| Telcon [sic] | 9,061 | 7,544 | 19,733 |
| Professional services (other) | 8,934 | 9,218 | -- |
| Dues and publications | 410 | 865 | -- |
| Software | -- | 759 | 8,678 |
| Courier | -- | -- | 4,041 |
| Charity contribution | -- | -- | 2,860 |
| Printing | 20,595 | 5,424 | -- |
| Commission and fees | -- | -- | 3,740 |
| Total | 162,278 | [4]189,912 | 211,709 |

[1]For the taxable year 1992, air travel also includes lodging.
[2]For the taxable year 1992, meals away from home combined meals and entertainment.
[3]Some items in this category would have been subject to sec. 274. Since none of the expenses were substantiated under sec. 162, it was unnecessary to subdivide the category further.
[4] For the taxable year 1991, petitioner inexplicably reported total expenses of $192,516 on line 28 of Schedule C.

HALPERN, <u>J.</u>, concurring in result:  I agree with the result reached by the majority.  However, I write separately because I disagree with the following steps taken by the majority in reaching that result:  one, incorporating a requirement of section 7522 into the definition of the term "new matter" and, two, suggesting that respondent's intent in drafting the notice of deficiency is relevant to the determination of whether a new theory is new matter with respect to such notice.

<u>The Term "New Matter"</u>

Rule 142(a) provides:

> (a) General:  The burden of proof shall be upon the petitioner, except as otherwise provided by statute or determined by the Court; and except that, in respect of any new matter, increases in deficiency, and affirmative defenses, pleaded in the answer, it shall be upon the respondent.  * * *

The majority recognizes that "[a] substantial body of case law has developed in this Court setting forth criteria for determining when the Commissioner is raising a 'new matter'." Majority op. pp. 14-15.  An examination of that case law reveals a disjunctive test to determine whether a new theory raised in respondent's answer is new matter for purposes of Rule 142(a). In <u>Achiro v. Commissioner</u>, 77 T.C. 881, 890 (1981), we stated:

> The assertion of a new theory which merely clarifies or develops the original determination without being inconsistent or increasing the amount of the deficiency is not a new matter requiring the shifting of the burden of proof.  *  *  *  However, if

the assertion in the amended answer either alters the
original deficiency or requires the presentation of
different evidence, then respondent has introduced a
new matter.  * * *

A new theory may or may not constitute new matter.  A new theory in the answer is new matter if either (1) the new theory is inconsistent with the notice (the inconsistency alternative), or (2) it requires the presentation of different evidence, i.e., evidence different from that necessary to prove a well-pleaded assignment of error (the different evidence alternative).  It is illogical, and defies common sense, to believe that, in the case of a disjunctive test such as our test for new matter, the failure to satisfy one alternative precludes the possibility of satisfying the other.  For instance, it does not follow from Achiro that, if a new theory is consistent with the notice, then it cannot be new matter.  A finding that a new theory is consistent with the notice simply leads to the conclusion that the new theory is not new matter pursuant to the inconsistency alternative; it does not foreclose the possibility that the new theory could be new matter pursuant to the different evidence alternative.

Golsen Doctrine

The majority finds, and I agree, that "[b]ased on our previously articulated test for determining whether respondent's reliance on section 66(b) is new matter, we would hold that it is

and that the burden of proof as to that issue should be on respondent." Majority op. p. 19. The majority's hesitation to make such a holding is based on the opinion of the Court of Appeals for the Ninth Circuit (Ninth Circuit) in Abatti v. Commissioner, 644 F.2d 1385 (9th Cir. 1981), revg. T.C. Memo. 1978-392. Respondent argues, and the majority appears to believe, that Abatti holds that, if a new theory is not inconsistent with the determination in the notice, then it is not new matter. See majority op. pp. 19-20. Respondent's argument ignores the disjunctive nature of our traditional interpretation: a new theory is new matter under either the inconsistency alternative or the different evidence alternative. Nevertheless, if Abatti means that the Ninth Circuit's interpretation of the term "new matter" is inconsistent with our interpretation, then the doctrine established by Golsen v. Commissioner, 54 T.C. 742 (1970), affd. 445 F.2d 985 (10th Cir. 1971), comes into play. The Golsen doctrine is that, notwithstanding that we are a national court and have the authority to render a decision inconsistent with any Court of Appeals, where a reversal would appear inevitable due to the clearly established position of the Court of Appeals to which an appeal would lie, we shall not insist on our view, but shall follow the Court of Appeals decision on point. Id. at 757; accord Lardas v. Commissioner, 99 T.C. 490, 494-495 (1992).

Jurisprudence of the Ninth Circuit

An examination of Abatti and subsequent Ninth Circuit authority leads me to believe that the Golsen doctrine does not bar us from applying our traditional interpretation.  In Abatti, the Ninth Circuit was reviewing our application of our Rule 142(a).  The Ninth Circuit relied on our opinion in Sorin v. Commissioner, 29 T.C. 959 (1958), affd. per curiam 271 F.2d 741 (2d Cir. 1959), for an interpretation of the term "new matter". Abatti v. Commissioner, supra at 1390.  In Sorin, we stated that, when a:

> determination is not broad enough to include the new ground, its presumptive correctness does not then extend to such new matter, which he [the Commissioner] is required to raise affirmatively in his answer. Under the Tax Court rules, the burden of proof as to it is expressly placed upon respondent.  * * *
>
> But when the determination is made in indefinite and general terms, and is not inconsistent with some position necessarily implicit in the determination itself, the situation is quite different.  * * *

29 T.C. at 969.  In Sorin, the different evidence alternative was not under consideration.  We held that the burden of proof should remain on the taxpayer because, contrary to the taxpayer's contention, the Commissioner had not taken a position inconsistent with the notice.  The Ninth Circuit reached a similar result in Abatti.  There, too, the taxpayer did not

raise, nor did the Ninth Circuit address, the different evidence alternative.

Stewart v. Commissioner, 714 F.2d 977 (9th Cir. 1983), affg. T.C. Memo. 1982-209, is a post-Abatti case that also required the Ninth Circuit to interpret Rule 142(a)'s use of the term "new matter". The Ninth Circuit concluded: "It is well settled that the assertion of a new theory that merely clarifies the original determination, without requiring the presentation of different evidence, does not shift the burden of proof." Id. at 990 (citing Achiro v. Commissioner, 77 T.C. at 890). Again, the Ninth Circuit stated an interpretation of the term "new matter" that, if considered in isolation, could be misunderstood to exclude alternative interpretations and would imply that, in every instance, a new theory that does not require different evidence is not new matter. I do not believe we must infer that, in going from Abatti to Stewart, the Ninth Circuit replaced one singular interpretation of the term "new matter", i.e., inconsistency, with another, i.e., different evidence. Clearly the Ninth Circuit has adopted both alternatives of our disjunctive test. Although the Ninth Circuit has stated each alternative in exclusive terms at different times, I think that those statements can be harmonized. If, however, either test preempts the other in the Ninth Circuit, we must conclude that

the different evidence alternative preempts the inconsistency alternative because Stewart postdates Abatti.

I agree with the majority that, pursuant to the different evidence alternative, respondent's reliance on section 66(b) is new matter within the meaning of Rule 142(a). Majority op. p. 19. The Golsen doctrine is no bar to that conclusion. For the reasons stated, I do not believe that respondent's argument, to wit, if a new theory is not inconsistent with the determination in the notice, then it is not new matter, would necessarily succeed in the Ninth Circuit. Therefore, I conclude that, under Golsen, we need not alter our disposition of the instant case on account of the jurisprudence of the Ninth Circuit.

Why Section 7522?

Instead of holding that respondent's reliance on section 66(b) is new matter pursuant to our case law, and in accord with the Ninth Circuit's opinion in Stewart, the majority makes various analytical errors, which I feel compelled to address. First, the majority incorporates the legislative mandate of section 7522, that the notice of deficiency shall describe an adequate basis, into the definition of "new matter". Imposition of the burden of proof is, in the absence of a legislative directive, a judicial function. The majority seems to believe that section 7522 should influence the Ninth Circuit in determining what constitutes new matter. See majority op. p. 23.

Indeed, the majority's holding appears to require <u>our</u>
consideration of a section 7522 requirement in determining what
is new matter.  I have difficulty understanding why the majority
concludes that section 7522 affects the allocation of the burden
of proof.  Section 7522 makes no mention of the burden of proof.
The majority has not persuaded me that, on account of a violation
of section 7522, Congress intended a particular remedy (i.e.,
allocating the burden of proof to the Commissioner as opposed to,
for instance, extending a period of limitations, if it operates
against the taxpayer, or awarding attorney's fees).[1]  Further,
assume the Commissioner issues a valid but inadequately
descriptive notice, in violation of section 7522.  If the
Commissioner introduces no new theory, would the majority remedy
the Commissioner's violation of section 7522 by placing the
burden of proof upon him?[2]

---

[1]     The only remedy that we can assuredly conclude is not
within the purview of sec. 7522 is an invalidation of such
inadequate notice.  See sec. 7522.

[2]     In that vein, consider Judge Beghe's concern:

that a vaguely broad notice that does no more than
state an intention to assess a deficiency in a
specified amount is not just a valid notice.  It's an
empty bottle that can be filled and made specific with
any theory and won't thereby be considered an
inconsistent theory or as requiring different evidence
so as to justify the shifting of the burden of proof to
the Commissioner.

(continued...)

The majority, however, has convinced itself that a reasonable method for enforcing the requirement of section 7522 is to allocate the burden of proof to the Commissioner with regard to any new theory that both (1) was not stated or described in the notice of deficiency and (2) requires the presentation of different evidence. Majority op. pp. 23, 25. I do not understand the cumulative aspect of such a test. Clearly, any new theory that requires the presentation of different evidence, thus satisfying the second prong, could not have been stated or described in the notice and, thus, will always satisfy the first prong. Adding the first prong, however, is a rhetorical device that serves only to import the section 7522 requirement into the new matter inquiry. The majority merely couples one of our traditional disjunctive alternatives, which has been explicitly adopted by the Ninth Circuit, to a restatement of the section 7522 requirement, to opine on what is

---

[2](...continued)
Beghe, J., concurring p. 42. Witness the case at bar, where the majority has found that, under the different evidence alternative, respondent raised new matter relative to his vaguely broad notice by trying, with consent, the sec. 66(b) issue. It seems a sufficient and appropriate response to Judge Beghe's concern to say that, if a new theory is both not inconsistent with a notice of deficiency and does not require different evidence, petitioner has not been prejudiced by such new theory. Therefore, notwithstanding that the notice may be an "empty bottle", there is no harm requiring redress.

a proper means of enforcement for section 7522. Such holding is both unnecessary and inappropriate on the facts before us.

Looking Beyond the Notice of Deficiency

My second concern with the majority's analysis is its suggestion that there may be a case in which the Commissioner's intent in drafting the notice of deficiency will determine whether a new theory is new matter under either the inconsistency or different evidence alternatives. The majority states: "Respondent failed to offer any evidence that indicated that respondent considered the application of community property law or section 66(b) in making his determination." Majority op. p. 16. The majority then finds: "[R]espondent gave no thought to community property law or section 66(b) when the notice of deficiency was prepared." Id. at 17. That finding, the majority continues, "supports our conclusion that section 66(b) was not implicit in the notice of deficiency." Id. Although the majority makes obeisance to the determining force of the notice's language ("The objective language in the notice of deficiency remains the controlling factor." Id.), the fact that the majority finds "support" in respondent's failure to consider section 66(b) suggests that intent has some role in determining whether a new theory is a new matter. If intent plays some role, then there is the possibility that, in a close case, intent (or lack thereof) could tip the balance. I disagree, and think that the majority

should make it clear that there is no connection between the Commissioner's intent and whether a new theory is implicit in a notice of deficiency.

Consider two taxpayers, each with unreported income, each married and filing separately, and each residing in a community property jurisdiction. Each receives an <u>identical</u> notice determining a deficiency in income tax on account of the omission of $100 in gross income. The notices do not mention section 66(b). Each taxpayer concedes receipt of the $100 and its taxable nature. Each pleads, nevertheless, that, as the receipt was community property, he is taxable only on one-half. In one case, in determining the deficiency, it was the Commissioner's intention (unexpressed in the notice) to disallow the benefits of community property under section 66(b). In the second case, the Commissioner was unaware that the receipt was community property. He becomes aware only after his right to amend the answer without leave of Court has expired. See Rule 41(a). The Commissioner's awareness may be a factor in determining whether, under Rule 41(a), the Court should give leave to amend the answer to incorporate the new theory. Assuming leave to amend is given, the question of whether the new theory constitutes new matter under Rule 142(a) involves different considerations, viz, whether the new theory is inconsistent with the notice or requires different evidence. Simply stated, it would violate principles

of horizontal equity to place the burden of proof on the taxpayer in the first case and on the Commissioner in the second case, when both taxpayers have identical tax attributes and received identical notices.

Conclusion

I fail to see what the majority's analysis adds to the jurisprudence of this Court, when attention to <u>Golsen v. Commissioner</u>, <u>supra</u>, would allow us to dispose of this issue without discussing section 7522 or respondent's intent. The Court is always free to place the burden of proof on respondent pursuant to the first sentence of Rule 142(a), which provides: "The burden of proof shall be upon the petitioner, except as otherwise * * * determined by the Court".[3] Placing the burden on respondent <u>because</u> section 7522 <u>makes</u> something "new matter", which otherwise is not, obfuscates not only our interpretation of the Ninth Circuit's jurisprudence, but our own jurisprudence as well. For the foregoing reasons, I respectfully concur in result.

CHABOT, WHALEN, and CHIECHI, <u>JJ</u>., agree with this concurring in result opinion.

---

[3] That portion of the rule would support the result that Judge Beghe would accomplish, and satisfy his pragmatic concern, without doing violence to the term "new matter".

BEGHE, J., concurring:  More than 4 years ago Judge Raum made the suggestion that bears fruit today, that section 7522(a) provides a justification for shifting the burden of proof to respondent as a sanction for vague notices of deficiency.  See Ludwig v. Commissioner, T.C. Memo. 1994-518.

I write on to respond to some of the objections to the majority opinion expressed in Judge Halpern's concurrence.

Judge Halpern's normative explication of the disjunctive tests for new matter--inconsistency and different evidence--is impeccable so far as it goes.  But he pays inadequate attention to another strand in the Tax Court's jurisprudence on this subject, exemplified by Sorin v. Commissioner, 29 T.C. 959 (1958), affd. per curiam 271 F.2d 741 (2d Cir. 1959), that the Court of Appeals for the Ninth Circuit relied upon, along with Judge Learned Hand's opinion in Olsen v. Helvering, 88 F.2d 650, 651 (2d Cir. 1937), to reverse us for our shifting of the burden of proof in Abatti v. Commissioner, 644 F.2d 1385 (9th Cir. 1981), revg. T.C. Memo. 1978-392.  That strand is to the effect that a vaguely broad notice that does no more than state an intention to assess a deficiency in a specified amount is not just a valid notice.  It's an empty bottle that can be filled and made specific with any theory and won't thereby be considered an inconsistent theory or as requiring different evidence so as to justify the shifting of the burden of proof to the Commissioner.

Our jurisprudence and that of the Ninth Circuit is sufficiently murky on this issue to justify using section 7522(a) to clarify the situation and set ourselves and our litigants on the right path for the future.

In so using section 7522(a), I frankly am impelled by pragmatic considerations. Commentators have suggested that the present situation is unsatisfactory because it encourages--even rewards--vagueness and imprecision in the Commissioner's deficiency notices and discourages the specificity that tells taxpayers the points they must put in issue in their petitions and prove at trial. It's appropriate to use section 7522(a) as the device for repudiating the line of cases represented by Sorin v. Commissioner, supra.

There's a theoretical as well as a pragmatic justification for so using section 7522(a) that answers the questions posed in Judge Halpern's concurrence, pp. 36-37. Judge Halpern follows up the general question--Just what is section 7522(a) supposed to accomplish?--by asking what justifies our decision to sanction a vague notice by shifting the burden of proof when the Commissioner's theory is finally put forth, as opposed to applying some other sanction, such as extending the period of limitations or awarding attorney's fees. The answer, I submit, is that shifting the burden on the ground that the theory, once stated by the Commissioner, constitutes "new matter" is an

appropriate, proportionate, and specifically directed response to the vagueness and inadequacy of the notice in failing to set forth any matter other than to express the intent to assess a specified amount of a particular tax.

Section 7522(a) was a signal from Congress that vague notices would thenceforth be disfavored.  Shifting the burden of proof to the Commissioner under section 7522(a) is an appropriate way to implement the not too clearly expressed intent of Congress.  In this regard, the "imaginative reconstruction" applied by Judge Learned Hand in other contexts, see, e.g., Lehigh Valley Coal Co. v. Yensavage, 218 F. 547, 553 (2d Cir. 1914)("Such statutes are partial * * * they should be construed, not as theorems of Euclid, but with some imagination of the purposes which lie behind them."), and espoused by Judge Posner, as well as by our own Judge Raum, points the direction in which we and the courts of appeals should go.  See Posner, Statutory Interpretation--in the Classroom and in the Courtroom, 50 U. Chi. L. Rev. 800, 817 (1983).