T.C. Summary Opinion 2004-5

UNITED STATES TAX COURT

JIMIE R. AND SANDRA HERLITSCHEK OVERBY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16627-02S.                    Filed January 21, 2004.

Jimie R. and Sandra Herlitschek Overby, pro se.

<u>James Brian Urie</u>, for respondent.


PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioners' Federal income tax in the amount of $10,167 and an accuracy-related penalty under section 6662(a) of $1,728.40 for taxable year 1995. After petitioners' concession,[1] the issues for decision are: (1) Whether petitioners received unreported income of $22,082.25 for 1995, as suggested by unexplained bank deposits made by them during that year; and (2) whether petitioners are liable for an accuracy-related penalty under section 6662(a) for 1995.

Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing their petition, petitioners resided in Green Lane, Pennsylvania.

During the year in issue, petitioner Jimie R. Overby (hereinafter petitioner) operated a general contracting business, while petitioner Sandra Herlitschek Overby operated a consulting business. Petitioners deposited the gross receipts from these two businesses into bank accounts opened at Quakertown National Bank. The bank accounts consisted of a checking account and a savings account.

During the year in issue, petitioners made bank deposits totaling $103,072.44. Of this total amount, $50,657 is

---

[1] Petitioners concede that they are not entitled to the claimed Schedule C, Profit or Loss From Business, deductions in the amount of $10,811 for the 1995 taxable year.

attributable to petitioners' wages; $132 is attributable to interest earned; $4,444.97 is attributable to transfers between petitioners' savings account and checking account; and $15,760.22 is attributable to employee reimbursements that petitioners received and deposited into their two bank accounts in 1995.

Petitioners timely filed a Form 1040, U.S. Individual Income Tax Return, for the 1995 taxable year (1995 return). Petitioners reported items of income and expenses for both businesses on one Schedule C, Profit or Loss From Business. In so doing, they reported $9,996 in gross receipts on Schedule C of their 1995 return.

Upon examination of petitioners' 1995 return, respondent's revenue agent performed a bank deposits analysis and determined that petitioners had unreported income based upon unexplained bank deposits. A summary of the revenue agent's bank deposit analysis for 1995 reflects the following:

| | |
|---|---|
| Deposits to bank accounts | $103,072.44 |
| Less deposits from known sources | 70,994.19 |
| Net deposits | 32,078.25 |
| Less gross receipts per return | 9,996.00 |
| Total unexplained deposits | 22,082.25 |

During the initial interview with the revenue agent, petitioner indicated that petitioners did not keep any cash at home. During a subsequent interview with the revenue agent,

petitioner explained that the unexplained bank deposits were due to gifts made in 1995 by his mother-in-law in the total amount of $20,000.

Not satisfied with petitioner's explanation, respondent issued petitioners a notice of deficiency dated August 9, 2002, determining a deficiency in Federal income tax of $10,167 and an accuracy-related penalty under section 6662(a) of $1,728.40 for the 1995 taxable year. Respondent contends that petitioners received unreported income of $22,082.25 for 1995, as suggested by unexplained bank deposits made by them during that year.

Discussion

1. Unreported Income

Gross income includes all income from whatever source derived. See sec. 61(a). Section 6001 requires all taxpayers to maintain adequate books and records of income. In the absence of adequate records, the Commissioner is authorized to reconstruct a taxpayer's income by any reasonable method that clearly reflects the taxpayer's income. See sec. 446(b); see also Agnellino v. Commissioner, 302 F.2d 797, 798-799 (3d Cir. 1962), affg. in part and vacating in part T.C. Memo. 1961-22. One of these methods, the bank deposits and cash expenditure method, has long been sanctioned by the courts. See Bacon v. Commissioner, T.C. Memo. 2000-257, affd. without published opinion 275 F.3d 33 (3d Cir. 2001).

Bank deposits are prima facie evidence of income. Clayton v. Commissioner, 102 T.C. 632, 645 (1994). When the Commissioner uses the bank deposits method of analysis to reconstruct a taxpayer's income, this method assumes that all money deposited in a taxpayer's bank account during a given period constitutes income to the taxpayer. The Commissioner must take into account any nontaxable source or deductible expense of which he has knowledge. Id. at 645-646. The taxpayer nonetheless has the burden of showing that the determination is incorrect.[2] Id. at 645.

Petitioners contend that unexplained bank deposits of $22,082.25 do not constitute income in that such amount was attributable to a cash hoard of lifetime earnings that they periodically "pulled from the ground and deposited * * * in the bank." Petitioner testified that he did not particularly like or trust banks, citing his parents' experience "during the Depression days", when "they lost money in the bank". Petitioner further testified: "I was a little leery of the IRS, so when I was asked some questions about did you have money at

_____

[2] Sec. 7491, regarding the shifting of the burden of proof, is generally effective for court proceedings arising in connection with examinations commencing after July 22, 1998, the date of enactment of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(a), 112 Stat. 726. The examination of petitioners' 1995 return commenced in 1997. Accordingly, sec. 7491 does not apply in the present case.

home or whatever, I said: 'No'." Petitioner finally testified that he maintained a "Dome book"[3] of bills and receipts during the year, but did not produce it at the time of trial.

We find petitioner's testimony and petitioners' explanations regarding the unexplained bank deposits to be self-serving and not credible. We are not bound to accept such testimony or explanations. See Shea v. Commissioner, 112 T.C. 183, 189 (1999). Indeed, we note that, despite their purported dislike and distrust of banks, petitioners deposited over $65,000 of wages and employee reimbursements into their bank accounts at Quakertown National Bank. We are satisfied that respondent gave petitioners proper credit for nonincome sources of deposits. Accordingly, we sustain respondent's determination.

## 2. Section 6662(a)

Respondent determined that petitioners are liable for the accuracy-related penalty under section 6662(a) for 1995. The accuracy-related penalty is equal to 20 percent of any portion of an underpayment of tax required to be shown on the return that is attributable to the taxpayer's negligence or disregard of rules or regulations. See sec. 6662(a) and (b)(1). "Negligence" consists of any failure to make a reasonable attempt to comply

---

[3] The origin of the term "Dome book" appears to be a book entitled "Legal Deductions Allowable If You Are Engaged In A Trade, Business or Profession" published by the Dome Publishing Company in Providence, R.I. See United States v. Resnick, 483 F.2d 354, 356 n.3 (5th Cir. 1973).

with the provisions of the Internal Revenue Code.  Sec. 6662(c).

"Disregard" consists of any careless, reckless, or intentional

disregard.  Id.

   An exception applies to the accuracy-related penalty when

the taxpayer demonstrates (1) there was reasonable cause for the

underpayment, and (2) he or she acted in good faith with respect

to such underpayment.  See sec. 6664(c).  Whether the taxpayer

acted with reasonable cause and in good faith is determined by

the relevant facts and circumstances.  The most important factor

is the extent of the taxpayer's effort to assess the proper tax

liability.  See Stubblefield v. Commissioner, T.C. Memo. 1996-

537; sec. 1.6664-4(b)(1), Income Tax Regs.  Section 1.6664-

4(b)(1), Income Tax Regs., specifically provides in part:

"Circumstances that may indicate reasonable cause and good faith

include an honest misunderstanding of fact or law that is

reasonable in light of the experience, knowledge and education of

the taxpayer."

   It is the taxpayer's responsibility to establish he or she

is not liable for the accuracy-related penalty imposed by section

6662(a).  See Rule 142(a).  Petitioners failed to explain

adequately why they did not report all of their income for 1995.

On the basis of the entire record, we conclude that petitioners

have not established that the underpayment of tax was due to

reasonable cause and that they acted in good faith.  Accordingly, we hold petitioners are liable for the accuracy-related penalty.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.