T.C. Summary Opinion 2004-89

UNITED STATES TAX COURT

ALBERT R. MATTHEWS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17869-02S.                    Filed July 1, 2004.

Albert R. Matthews, pro se.

<u>Donald E. Edwards</u>, for respondent.


WOLFE, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect at relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. When he filed his petition, petitioner resided in Muskogee, Oklahoma.

Respondent determined deficiencies in petitioner's Federal income taxes, additions to tax under section 6651(a)(1), and accuracy-related penalties under section 6662(a) as follows:

| Year | Deficiency | Additions to Tax Sec. 6651(a)(1) | Penalties Sec. 6662(a) |
|------|------------|------------------------------|--------------------|
| 1997 | $26,097 | $6,524.26 | $5,146.20 |
| 1998 | 19,113 | 4,778.25 | 3,341.80 |
| 1999 | 18,173 | 1,750.95 | 3,329.80 |

The issues for decision are: (1) Whether petitioner engaged in his rodeo and horse-training activity during 1997-99 with the objective of making a profit within the meaning of section 183, (2) whether petitioner is liable for additions to tax under section 6651(a)(1) for filing his tax returns after the due dates, and (3) whether petitioner is liable for accuracy-related penalties under section 6662(a).

## Background

Petitioner is an attorney and partner with the Bonds Matthews Law Firm in Muskogee, Oklahoma. Petitioner's law practice is concentrated primarily in litigation and plaintiff personal injury law. In 1997, 1998, and 1999, petitioner's

taxable income from his law practice was $214,736, $164,008, and $161,332, respectively.[1]

In addition to practicing law, petitioner also is engaged in rodeo and horse-training activities (horse activity) that are the subject of this case. Petitioner raises and trains horses on his ranch in Muskogee, Oklahoma, where he also resides. For the years 1991 and 1993 through 1999 (data is not available for 1992), petitioner reported income and expenses and claimed losses from his horse activity as follows:

| Year | Rodeo & Horse Gross Income | Rodeo & Horse Expenses | Rodeo & Horse Losses |
| --- | --- | --- | --- |
| 1991 | $17,763 | $92,116 | ($74,353) |
| 1992 | | Data not available | |
| 1993 | 6,264 | 66,211 | (59,947) |
| 1994 | 3,130 | 58,983 | (55,853) |
| 1995 | 15,195 | 53,622 | (38,427) |
| 1996 | 4,625 | 45,736 | (41,111) |
| 1997 | 1,016 | 60,837 | (59,821) |
| 1998 | 8,212 | 52,477 | (44,265) |
| 1999 | 4,616 | 47,377 | (42,761) |
| Total | 60,821 | 477,359 | (416,538) |

As shown above by the table, petitioner claimed horse activity losses of $59,821, $44,265, and $42,761 on Schedule C,

_____

[1] The parties stipulated that these amounts were earned from practicing law. However, a review of Schedules E, Supplemental Income and Loss, for the years in issue shows that, while most of petitioner's income consisted of partnership distributions from the Bonds Matthews Law Firm, petitioner also received Schedule E income in the form of royalties from TEPPCO Crude Oil, LLC, and GM Oil Prop, Inc., partnership income or loss from the Matthews, Bonds Jr., & Hayes Building Partnership, and income or loss from an S corporation called Hopes & Dreams Ltd.

Profit or Loss from Business, in 1997, 1998, and 1999, respectively.[2]

Petitioner's income tax returns for the years in issue were received by the Internal Revenue Service on the following dates: (1) Petitioner's 1997 tax return was received on July 7, 1999, (2) petitioner's 1998 tax return was received on August 23, 2000, and (3) petitioner's 1999 tax return was received on December 26, 2000.

By notice of deficiency dated August 30, 2002, respondent determined that petitioner's horse activity was not engaged in for profit, and the corresponding deductions for the Schedule C losses from this activity were disallowed.

## Discussion

### I.  Deductibility of Losses

In general, a taxpayer bears the burden of proving his entitlement to business expense deductions.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933); Burrus v. Commissioner, T.C. Memo. 2003-285.  Section 7491(a) does not apply in this case to shift the burden of proof to respondent.  Petitioner has neither alleged that section 7491 applies nor established his compliance with the requirements of section 7491(a)(2)(A) and (B)

---

[2]  The total amounts of losses deducted on petitioner's tax returns for 1997, 1998, and 1999 actually were $56,733, $44,265, and $30,910, respectively.  Petitioner's Schedule C losses from his horse activity were offset by Schedule C income from his law practice in the amounts of $3,088 in 1997 and $11,851 in 1999.

to substantiate items, maintain required records, and cooperate fully with respondent's reasonable requests. In addition, petitioner is not entitled to a presumption that his horse activity is engaged in for profit under section 183(d) because petitioner's gross income from his horse activity has not exceeded deductions for any 2 years in the period of 7 consecutive taxable years ending with the first of the years in issue. Sec. 183(d). Thus, petitioner has the burden of proving that respondent's determination is incorrect and that he is entitled to the claimed losses from his horse activity.

The deductibility of a taxpayer's expenses attributable to an income-producing activity depends upon whether that activity was engaged in for profit. See secs. 162, 183, 212. Section 162 provides that a taxpayer who is carrying on a trade or business may deduct ordinary and necessary expenses incurred in connection with the operation of the business. Section 212 provides a deduction for expenses paid or incurred in connection with an activity engaged in for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income. Section 183 specifically precludes deductions for activities "not engaged in for profit" except to the extent of the gross income derived from such activities. Secs. 183(a) and (b)(2). For example, deductions

are not allowable for activities a taxpayer engaged in as a sport or hobby or for recreation. Sec. 1.183-2(a), Income Tax Regs.

For a taxpayer's expenses in an activity to be deductible under section 162 or section 212, and not subject to the limitations of section 183, the taxpayer must show that he engaged in the activity with an actual and honest objective of making a profit. Hulter v. Commissioner, 91 T.C. 371, 392 (1988); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983); Hastings v. Commissioner, T.C. Memo. 2002-310. Although a reasonable expectation of a profit is not required, the taxpayer's profit objective must be "actual and honest". Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs. Whether a taxpayer has an actual and honest profit objective is a question of fact to be resolved from all the relevant facts and circumstances. Hulter v. Commissioner, supra at 393; Hastings v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs. Greater weight is given to objective facts than to a taxpayer's statement of intent. Dreicer v. Commissioner, supra at 645; sec. 1.183-2(a), Income Tax Regs. As stated earlier, the taxpayer bears the burden of establishing the requisite profit objective. Rule 142(a); Keanini v. Commissioner, 94 T.C. 41, 46 (1990); Hastings v. Commissioner, supra.

Regulations promulgated under section 183 provide the following nonexclusive list of factors which normally should be considered in determining whether an activity was engaged in for profit: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation. Sec. 1.183-2(b), Income Tax Regs. No single factor, nor the existence of even a majority of the factors, is controlling, but rather it is an evaluation of all the facts and circumstances in the case, taken as a whole, that is determinative. Golanty v. Commissioner, 72 T.C. 411, 426-427 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); sec. 1.183-2(b), Income Tax Regs.

Petitioner claims that he engaged in his horse activity with a profit objective, but he has not introduced any records or documentation to substantiate his claims. A taxpayer is required to maintain records sufficient to substantiate deductions that he claims on his tax return. Sec. 6001; sec. 1.6001-1(a), Income

Tax Regs. The fact that a taxpayer reports a deduction on his income tax return is not sufficient to substantiate the deduction claimed on the return. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974). Despite petitioner's training and experience as an attorney, he did not have his books and records stipulated into evidence and did not bring any supporting documentation with him to trial. The stipulation of facts agreed upon by the parties did not include necessary objective facts relevant to the issue of whether petitioner operated his horse activity with a profit motive.

Instead of introducing objective evidence that he engaged in his horse activity for profit, petitioner stated that he "chose to come [before the Court] and tell my story of what I have done for the past 45 years." Petitioner testified that he has been involved in activities relating to cattle and horses for the past 40 or 50 years and has focused on raising and training horses for about the past 25 years. He was raised on a farm, majored in animal husbandry in college, and considers himself an expert in raising and training horses. Consequently, petitioner explained that he never felt the need to consult with outside experts. He bought his ranch in Muskogee about 20 years ago and has made numerous improvements over the years, including constructing both indoor and outdoor training arenas, three barns, miles of

fencing, and pipe corrals. He formed a futurity named Hopes and Dreams Futurity in the early 1980s[3] and remains active in promoting his horses at various rodeos and horse shows throughout the nation.

Petitioner specifically testified that he has always been in the horse business for profit, and that during the years in issue, he split his time equally between his law practice and his horse activity. Petitioner did not maintain a separate bank account for his horse activity and did not keep an inventory accounting of each individual horse. Petitioner testified that he kept inventory as he claims most ranchers do--by simply keeping track of "how much money you take in and how much money you spend". Petitioner suggested that on the basis of these cashflows, he expects to profit from the sale of each horse once it is fully trained. Furthermore, petitioner testified that most

---

[3] Petitioner explained the Hopes and Dreams Futurity as follows:

> Hopes and Dreams takes – enrolls stallions in their program of $1000 stud fee or less.

> And they put that money in a pot, and Hopes and Dreams takes a small percentage of it. Then the foals – if that entices a mare owner to breed to these stallions that are enrolled in Hopes and Dreams, and when they breed to them, their foals, which are the offspring of the mare, are then eligible for the futurity that they run at two years of age.

> Now, after about three or four years, the pot got pretty big, and you'd pay out for the winner of the Hopes and Dreams * * *

ranchers experience a history of operating losses as money is spent improving their land but will make a profit when they eventually sell their ranches.  Petitioner stated that the value of his ranch has appreciated significantly, and he estimated that the value of his ranch has increased from $150 per acre to approximately $1,000 to $1,500 per acre.

Without supporting documentation, petitioner's testimony is self-serving, and it is well established that this Court is not bound to accept at face value such unverified testimony from a taxpayer.  See Shea v. Commissioner, 112 T.C. 183, 189 (1999); Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

We apply the nine factors provided in the regulations, sec. 1.183-2(b), Income Tax Regs., to the limited evidence petitioner introduced to prove that he was engaged in his horse activity for profit.

In the complete absence of books and records, we can only conclude that petitioner did not engage in his horse activity in a businesslike manner.  Although petitioner claims that he sent receipts to his accountant twice a year for purposes of maintaining books and records for his ranch, petitioner did not introduce these books and records into evidence.  In addition, petitioner did not develop a budget or an informal business plan to project whether the horse activity could be operated profitably, did not have a separate bank account for his horse

activity, and did not maintain an inventory accounting for each of his horses.

His testimony indicates that petitioner's primary expectation for a profit comes from the anticipated appreciation in the value of his assets, his ranch property and improvements and his horses. Because of the absence of supporting documentation, such as an outside appraisal, records from the sale of comparable ranch property in the area, or receipts for the cost of the improvements to his ranch, petitioner failed to substantiate the value of his ranch. Furthermore, in response to direct questioning from this Court, petitioner admitted that the current value of his ranch is probably less than the cumulative amount of losses he has claimed from his horse activity. Petitioner speculated that his property will continue to appreciate tremendously in the future, but he did not introduce any objective evidence of projected increases in property values in the area of his ranch for the Court to consider. As to the values of his horses, petitioner's 1997 return showed a sale of a horse at a loss of $7,500, undermining his own unverified and self-serving testimony that he expects to profit from the sale of his horses. Petitioner failed to substantiate the value of his assets or the likelihood of any appreciation in the value of these assets. The record clearly shows that petitioner's horse activity has produced a history of losses. For each year since

1991 for which his financial information was made available to the Court, petitioner reported substantial losses from the horse activity. Petitioner has not introduced evidence of even a single profitable year, although he did offer uncorroborated testimony that he previously sold a cattle ranch at a profit and sold a portion of his current horse ranch in 2001 to a relative at a profit.

In contrast to his history of losses from his horse activity, the record shows that petitioner was a successful attorney. For the years in question, petitioner was able to use losses from his horse activity to offset income earned from the practice of law. The magnitude of petitioner's losses from his horse activity and the substantial tax benefits petitioner received by offsetting those losses against income from his law practice support the view that petitioner did not engage in his horse activity for profit.

Petitioner testified that he was an expert in raising and training horses. He grew up on his father's cattle and horse farm, has a degree in animal husbandry, and has focused on training horses for the past 25 years. Petitioner's testimony that he is an expert in raising and training horses and that he had no need to consult with advisers about such matters is not contradicted. Petitioner also testified that he spent approximately one-half of his time on his horse activity.

Although we cannot overlook the fact that petitioner had a successful legal practice during the years in issue, it does appear that petitioner spent a substantial amount of time with his horse activity. However, these factors, particularly standing alone, are not enough to show that petitioner engaged in his horse activity for profit.

Finally, petitioner admitted that he received personal pleasure and enjoyment from his horse activity but stated that he was always in it to make money.

From this record, we conclude that petitioner did not have an actual and honest objective of making a profit from his horse activity. Rather, the record demonstrates that petitioner conducted this activity as part of his way of life and at least partly for pleasure, and he used expenses from this activity to offset income from his law practice. Under section 183, his horse activity was not engaged in for profit, and petitioner is not permitted to deduct losses from his horse activity.

II. <u>Additions to Tax</u>

Section 6651(a)(1) imposes an addition to tax for a taxpayer's failure to file a required return on or before the specified filing date, including extensions. The amount of the liability is based upon a percentage of the tax required to be shown on the return. Sec. 6651(a)(1). The addition to tax is inapplicable, however, if the taxpayer's failure to file the

return was due to "reasonable cause and not due to willful neglect".  Sec. 6651(a)(1).

Under section 7491(c), the Commissioner bears the burden of production with regard to whether any penalty or addition to tax is appropriate, but he does not bear the burden of proof with regard to the "reasonable cause" exception of section 6651(a). Higbee v. Commissioner, 116 T.C. 438, 447 (2001).  Petitioner's tax returns for 1997, 1998, and 1999 are part of the record, and the filing dates of the returns were stipulated.  In the notice of deficiency, respondent sets forth the following:  (1) For 1997, petitioner's return was due on August 15, 1998, and was filed on July 7, 1999, approximately 11 months after its due date; (2) for 1998, petitioner's return was due on August 15, 1999, and was filed on August 23, 2000, approximately 12 months after its due date; and (3) for 1999, petitioner's return was due on October 15, 2000, and was received on December 26, 2000, approximately 2 months after its due date.  The stipulation of facts and the stipulated tax returns are consistent with these statements in the notice of deficiency.  On the basis of this record, we conclude that respondent has satisfied the burden of production in regard to whether the additions to tax under section 6651(a)(1) are appropriate.

Because respondent met his burden of production, petitioner is liable for the additions to tax unless he can show his failure

to file was due to reasonable cause and not willful neglect.  See Higbee v. Commissioner, supra at 447.  Petitioner did not argue that his failure to file was due to reasonable cause, nor is there any evidence in the record to suggest that petitioner's failure to file was due to reasonable cause.  Accordingly, we sustain the additions to tax under section 6651(a)(1).

III.  Penalties for Underpayment of Tax

Section 6662 provides that a taxpayer may be liable for a penalty of 20 percent of the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations.  A substantial understatement of tax occurs where the understatement exceeds the greater of 10 percent of the tax required to be shown or $5,000.  Sec. 6662(d)(1)(A).  "Negligence" is defined as any failure to make a reasonable attempt to comply with the provisions of the Internal Revenue Code and includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.  "Disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).

A taxpayer may avoid the accuracy-related penalty with respect to any portion of an underpayment of tax if the taxpayer acted with reasonable cause and good faith under section 6664(c).  The determination of whether the taxpayer acted with

reasonable cause and good faith depends upon all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his proper tax liability, including the taxpayer's reasonable and good faith reliance on the advice of a professional such as an accountant. See id. Further, an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith. See Remy v. Commissioner, T.C. Memo. 1997-72; sec. 1.6664-4(b)(1) Income Tax Regs.

As discussed above, section 7491(c) imposes upon the Commissioner the burden of production with regard to any penalty or addition to tax, including the section 6662(a) penalty. Once the Commissioner comes forward with sufficient evidence to indicate that it is appropriate to impose the section 6662(a) penalty, the taxpayer has the burden of proof in regard to whether the taxpayer acted with reasonable cause and in good faith under section 6664(c)(1). Higbee v. Commissioner, supra at 447; Emerson v. Commissioner, T.C. Memo. 2003-82.

In the notice of deficiency, respondent summarized his calculations of petitioner's underpayments of tax as follows: (1) In 1997, respondent calculated an understatement of $25,731 on a tax liability of $71,354, or a 36-percent understatement, (2) in 1998, respondent calculated an understatement of $16,709

on a tax liability of $56,423, or a 29.6-percent understatement, and (3) for 1999, respondent calculated an understatement of $16,649 on a tax liability of $62,381, or a 26.7-percent understatement.  Therefore, from the notice of deficiency, it is clear that petitioner's understatement of tax for each year is a substantial understatement under section 6662(d)(1)(A), and respondent has satisfied his burden of production.  These computations are consistent with our disallowance of petitioner's claimed deductions for losses in excess of his revenue from his horse activity.

Petitioner did not present convincing evidence that his underpayments of tax resulted in spite of his acting with reasonable cause and good faith.  He argued only that he had been claiming the disallowed deductions for many years without adverse results.  Under these circumstances, we sustain respondent's determination of accuracy-related penalties under section 6662(a).

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered

for respondent.