T.C. Memo. 2009-173

UNITED STATES TAX COURT

SHENAE A. OUTERBRIDGE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7907-08.                    Filed July 21, 2009.

Shenae A. Outerbridge, pro se.

<u>Michele A. Yates</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, <u>Judge</u>:  Respondent determined a deficiency of $8,389 in petitioner's Federal income tax for 2006.  After concessions, the issue for decision is whether petitioner is entitled to deduct $46,173.49 in relation to a travel services activity. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all

Rule references are to the Tax Court Rules of Practice and Procedure.

                         FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in Virginia at the time she filed her petition.

Petitioner achieved a college degree in accounting. During 2006, petitioner worked as an auditor for the firm of McGladrey & Pullen, L.L.P., reviewing financial statements and reconciling balance sheets. Petitioner also attended evening classes at Keller Graduate School of Management for the purpose of obtaining a master's degree in business.

In December 2005, petitioner attended a marketing session for YTB Travel Network (YTB). YTB operated as an online multilevel marketing company and hosted a Web portal for "referring travel agents" to complete travel sales to clients. YTB paid a commission for any such completed sales. YTB charged fees of $49.95 per month for use of its Web site.

Petitioner, on behalf of "Firefly Xpress Travel, a Sole Proprietorship" (Firefly), entered into a sublease "dated as of January 1, 2006" for a 1-year term commencing January 1, 2006, at $4,000 per month. The premises were described as the ground floor of a property in Stafford, Virginia. Rosary Edwards

(Edwards) signed the lease for United States Collection Bureau, as "sublandlord", and Jauquine Tantillo (Tantillo) signed the lease as "landlord". Tantillo was a friend of petitioner through his cousin. Rosary Edwards is the mother of Jauquine Tantillo and was a friend of petitioner, whom she had known for about 9 years. Tantillo occupied a separate part of the property as his residence.

Petitioner did not begin any activity for Firefly before February 2006. On March 23, 2006, she booked a travel package for herself and a companion on the travel portal. On March 28, 2006, she received a package from YTB that included a business card, online order form, and rules regarding the YTB structure and compensation plan. Simply stated, commissions of $50 would be paid on direct sales, and additional commissions depended on being part of a team that secured or sponsored additional "referring travel agents".

Petitioner never received a commission from YTB. She paid Web site access fees of $49.95 for 2 months, April and May 2006. By July 2006, petitioner canceled her arrangement with YTB and terminated the travel services activity.

On petitioner's Form 1040, U.S. Individual Income Tax Return, for 2006, signed March 1, 2007, she reported wage income of $74,766.29 and claimed $72,061.64 on Schedule A, Itemized Deductions. She reported no payments by withholding or otherwise

and no tax liability.  On the Schedule A "Other expenses" line she deducted $46,173.49, described as office expenses of $173.49 and office rent expense of $46,000.

On Form 1040X, Amended U.S. Individual Income Tax Return, for 2006 signed April 16, 2007, petitioner reduced the itemized deductions claimed on Schedule A and claimed $46,099.90 on Schedule C, Profit or Loss From Business.  The business claimed was a travel services business known as Firefly Xpress Travel with a Stafford, Virginia, address.  No gross receipts were reported, and the claimed expense deductions were office expenses of $99.90 and an office rent expense of $46,000.

The notice of deficiency determined that petitioner was liable for the alternative minimum tax because of the "excess itemized deductions", pursuant to sections 55 and 56(b)(1). Acknowledging the amended return that petitioner had submitted, the Form 886-A, Explanation of Items, attached to the notice of deficiency stated:  "Since it does not appear that we have received any supporting documentation to verify your Schedule C and expenses, we have continued to disallow your request for changes."  The notice did not disallow the expense deductions claimed on Schedule A of the original Form 1040.  Respondent has now conceded that the alternative minimum tax is not applicable and challenges the deductibility of the amounts claimed on Schedule C of the Form 1040X.

Petitioner did not make regular rent payments by check or money order.  To substantiate her claimed rental expenses, petitioner produced a series of "receipts" reflecting the following dates and amounts:

| Date | Amount |
| --- | --- |
| 1/06 | $1,500 |
| 2/06 | 2,000 |
| 3/06 | 1,200 |
| 4/06 | 7,300 |
| 5/06 | 1,600 |
| 6/06 | 5,100 |
| 7/06 | 5,500 |
| 8/06 | 2,000 |
| 9/06 | 5,500 |
| 10/06 | 3,500 |
| 11/06 | 6,634 |
| 12/06 | 4,166 |

OPINION

Petitioner, Edwards, and Tantillo testified that they agreed on a lease of property in a residential area of Stafford, Virginia.  According to petitioner, the leased space was furnished "like an entertainment sort of setting" with a "bar area", a separate entrance, a kitchenette with refrigerator, and space for a borrowed computer.  According to Tantillo, the lease also provided for utilities, cable and satellite, and a monthly allowance of about $100 for food.  Tantillo testified that the lease started March 1, 2006 (notwithstanding the January 1, 2006, date on the lease).  He testified that he declined to terminate the lease in July 2006 when petitioner's travel services activity

ceased, but that he agreed to terminate the lease 5 months later in December 2006 because:

> Well, that's because it came into a little controversy with my fiancee. Basically she had a disagreement about a woman renting out the apartment where she got kind of jealous. In June she moved in and pretty much there was a lot of issues, so in December that's when the mutual agreement was made.

Petitioner did not pay the rent by check or money order or in regular amounts. According to Tantillo, the rent was paid by bank transfers. During his testimony he explained the receipts as follows:

> Q     And what are those documents?
>
> A     Rent receipts.
>
> Q     And do those documents correspond with the exact timing of your receipt of Firefly Xpress Travel's bank remittance of the lease payments?
>
> A     Not exactly. Some of them are. Some of them might not be.
>
> Q     And why not?
>
> A     Because depending on when I checked the bank account and depending on when I received the funds it could fluctuate from month to month.
>
> So if I received -- if I checked on like the 2nd and the payment was on the 30th, I might have applied it to the next month's receipt, so it depends on when I actually checked it.

Generally, the taxpayer has the burden of proving that the claimed expenses were ordinary and necessary business expenses rather than nondeductible personal expenses. New Colonial Ice

Co. v. Helvering, 292 U.S. 435, 440 (1934); Welch v. Helvering, 290 U.S. 111, 113-114 (1933). In a case involving deductions, such as this one, concessions and variations from the determination in the notice of deficiency do not relieve the taxpayer of the burden of establishing the deductible nature and amount of the items in dispute. Gatlin v. Commissioner, 754 F.2d 921, 923-924 (11th Cir. 1985), affg. T.C. Memo. 1982-489.

Petitioner does not dispute respondent's reliance on the general rule. She argues that the burden of proof has shifted under section 7491(a). The burden of proof shifts only if a taxpayer produces credible evidence with respect to a factual issue. Petitioner has not satisfied that standard. See Higbee v. Commissioner, 116 T.C. 438, 442 (2001).

We are not required to accept testimony that is improbable or implausible. See Geiger v. Commissioner, 440 F.2d 688, 689-690 (9th Cir. 1971), affg. T.C. Memo. 1969-159; Shea v. Commissioner, 112 T.C. 183, 189 (1999). Petitioner's claimed deductions against her reported income were so large as to be improbable. It is not plausible that petitioner, a trained accountant and auditor earning less than $75,000 per year, would incur and pay $46,000 in rent for property to be used in a business that had little potential, never produced any income, and was abandoned after 2 months with no more than minimal activity. So far as the record discloses, the activity included

personal travel and vaguely described entertainment.  There are simply too many gaps in the scenario presented by petitioner and her friends for us to accept her claims.  The reliable evidence strongly suggests that the amounts in dispute were personal in nature.  See sec. 262.

We have considered the other arguments of the parties.  They are either unnecessary to our conclusion or lacking in merit.  To reflect concessions by respondent,

<u>Decision will be entered under Rule 155</u>.