T.C. Summary Opinion 2012-35

UNITED STATES TAX COURT

RAYFORD JAY RICHARDSON, JR., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10584-10S.                    Filed April 19, 2012.

Rayford Jay Richardson, Jr., pro se.

<u>Clint J. Locke</u> and <u>John W. Sheffield III</u>, for respondent.

SUMMARY OPINION

MARVEL, <u>Judge</u>: This case was heard pursuant to the provisions of section

7463[1] of the Internal Revenue Code in effect when the petition was filed. Pursuant

_____

[1]Unless otherwise indicated, all section references are to the Internal Revenue
Code, as amended, in effect for the relevant period, and all Rule references are to
                                                            (continued...)

to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2008 Federal income tax of $8,000. The sole issue for decision is whether petitioner is entitled to the section 36 first-time homebuyer credit (FTHBC) for 2008.

## Background

Some of the facts have been stipulated. The stipulation of facts and facts drawn from stipulated exhibits are incorporated herein by this reference. Petitioner resided in Alabama when he filed his petition.

After graduating from Hardy University in approximately 2004 with a bachelor's degree in business management, petitioner began working for his family's car wash business. Petitioner also began to engage in real estate transactions. In 2005 petitioner acquired a lot in Timberland Estates (Timberland property) from his parents, constructed a home on the lot, and then sold the property at a profit. In 2005 petitioner also purchased improved property on Springview Drive (Springview Drive property) and renovated it. Although petitioner intended to

---

[1](...continued)
the Tax Court Rules of Practice and Procedure.

sell the Springview Drive property and attempted to do so, he now uses it as a rental property.

In February 2006 petitioner purchased improved property on Highpoint Drive (Highpoint Drive property) and renovated it. Although petitioner initially intended to sell the Highpoint Drive property, he retained ownership of the property and, at some point, he began to rent it. Petitioner received correspondence at the Highpoint Drive address during 2006 and 2007. For 2005, 2006, and 2007 petitioner claimed home mortgage interest deductions for the Highpoint Drive property.[2] For 2008 petitioner claimed a homestead exemption for the Highpoint Drive property by filing a claim with the Revenue Commissioner for Mobile County, Alabama.

On October 1, 2007, petitioner purchased an unimproved lot on Rue Royal in Mobile, Alabama (Rue Royal property). Petitioner obtained a construction loan and constructed a personal residence on the property. Petitioner moved into the residence on the Rue Royal property on May 9, 2009.

---

[2]For 2007 petitioner reported a deduction for mortgage interest with respect to the Highpoint Drive property on both Schedule A, Itemized Deductions, and Schedule E, Supplemental Income and Loss. On January 4, 2011, Jerome C. Olsen, a certified public accountant, submitted petitioner's Form 1040X, Amended U.S. Individual Income Tax Return, for 2007. Petitioner did not file his Form 1040X until after he filed a petition in this Court for redetermination of the deficiency respondent determined for 2008.

Petitioner timely filed his Form 1040, U.S. Individual Income Tax Return, for 2008.[3] On his Form 1040, petitioner claimed a filing status of single and listed the Rue Royal address as his current home.[4] Petitioner attached to his return a Form 5405, First-Time Homebuyer Credit, on which he claimed an $8,000 FTHBC with respect to the Rue Royal property.[5] Petitioner's Form 1040 included a Schedule E, Supplemental Income and Loss, on which he reported rents received and expenses with respect to the Springview Drive and Highpoint Drive properties.[6] Petitioner claimed a refund of $11,196 for 2008.

----

[3]Mr. Olsen prepared petitioner's return for 2008. Mr. Olsen calculated the amount of petitioner's FTHBC by analyzing petitioner's salary and the closing statement for the Rue Royal property. In preparing the return, Mr. Olsen relied on petitioner's representation that he was entitled to the credit.

[4]Generally, a taxpayer is eligible for a maximum FTHBC of $8,000. See sec. 36(b)(1)(A). If the taxpayer uses the filing status of married filing separately, the taxpayer is eligible for a maximum FTHBC of $4,000. See sec. 36(b)(1)(B). Petitioner testified that he married in December 2008, but he submitted to respondent signed affidavits stating that he married in 2009. Respondent contends that if petitioner is eligible for the FTHBC, this Court should limit the FTHBC to $4,000 because petitioner testified that he married in 2008. Because we hold that petitioner is not entitled to the FTHBC, we need not decide this issue.

[5]A taxpayer may claim an FTHBC on his 2008 tax return for a principal residence purchased after December 31, 2008, and before December 1, 2009. See sec. 36(g). Therefore, if petitioner is eligible for the FTHBC with respect to the Rue Royal property, he may claim the FTHBC on his 2008 return even though he did not begin occupying the Rue Royal property until 2009. See sec. 36(c)(3)(B).

[6]On an attached Schedule A petitioner claimed a home mortgage interest

(continued...)

On October 5, 2009, respondent mailed petitioner a letter requesting additional information to substantiate his claimed FTHBC. Respondent requested that petitioner provide either a copy of the closing contract bearing all parties' signatures, a copy of the document showing property transfer tax paid upon purchase, or an original letter from a government entity that showed "the property address, purchase price, and purchase date, and seller and buyer names". If no single document showed all of the required information, respondent directed petitioner to provide a combination of documents. Respondent also requested a copy of the occupancy permit for petitioner's newly constructed home. Petitioner partially complied with respondent's request by mailing to respondent a copy of the settlement statement with no seller signature, a tax information sheet, and a copy of the occupancy permit for the Rue Royal property. On April 5, 2010, respondent mailed to petitioner a notice of deficiency in which respondent determined that he was not entitled to claim any portion of the FTHBC.

---

[6](...continued)
deduction of $4,115. Mr. Olsen testified that he erroneously reported on petitioner's 2008 return a home mortgage interest deduction with respect to the Rue Royal property.

Discussion

I.      Burden of Proof

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of showing the determinations are erroneous.  Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).  The burden of proof shifts to the Commissioner only if the taxpayer produces credible evidence to support the deduction or position, the taxpayer has complied with the substantiation requirements, and the taxpayer has cooperated with the Secretary[7] with regard to all reasonable requests for information.  Sec. 7491(a); see also Higbee v. Commissioner, 116 T.C. 438, 440-441 (2001).

Petitioner does not contend that section 7491(a)(1) applies, and the record does not permit us to conclude that he satisfied the requirements of section 7491(a)(2).  Accordingly, petitioner bears the burden of proving that he properly claimed the FTHBC on his return.

---

[7]The term "Secretary" means "the Secretary of the Treasury or his delegate", sec. 7701(a)(11)(B), and the term "or his delegate" means "any officer, employee, or agency of the Treasury Department duly authorized by the Secretary of the Treasury directly, or indirectly by one or more redelegations of authority, to perform the function mentioned or described in the context", sec. 7701(a)(12)(A).

II.     Eligibility for FTHBC

Section 36(a) allows a credit for a first-time homebuyer of a principal residence. A first-time homebuyer is "any individual if such individual (and if married, such individual's spouse) had no present ownership interest in a principal residence during the 3-year period ending on the date of the purchase of the principal residence to which this section applies." Sec. 36(c)(1). When the taxpayer constructs a residence, the date of purchase of the residence is "the date the taxpayer first occupies such residence." Sec. 36(c)(3)(B).

Petitioner is eligible as a first-time homebuyer if he had no ownership interest in a principal residence after May 8, 2006, and before May 9, 2009. See Foster v. Commissioner, 138 T.C. __, __ (slip op. at 3-4) (Jan. 30, 2012). Respondent contends that petitioner was not a first-time homebuyer because he held an ownership interest in the Highpoint Drive property and used the Highpoint Drive property as his principal residence. Petitioner does not dispute that he owns the Highpoint Drive property, but he contends that he resided with his parents at their home on Brandy Run Road and that he did not own that property.

For purposes of the FTHBC, section 36(c)(2) provides that the term "principal residence" has the same meaning as in section 121. Whether a taxpayer uses a property as his principal residence depends upon all the facts and

circumstances. See sec. 1.121-1(b)(2), Income Tax Regs. Ordinarily, the

taxpayer's principal residence is the property the taxpayer uses during most of the

year. See id. Section 1.121-1(b)(2), Income Tax Regs., provides:

> (2) Principal residence. * * * In addition to the taxpayer's use of the property, relevant factors in determining a taxpayer's principal residence, include, but are not limited to--
>
> (i) The taxpayer's place of employment;
>
> (ii) The principal place of abode of the taxpayer's family members;
>
> (iii) The address listed on the taxpayer's federal and state tax returns, driver's license, automobile registration, and voter registration card;
>
> (iv) The taxpayer's mailing address for bills and correspondence;
>
> (v) The location of the taxpayer's banks; and
>
> (vi) The location of religious organizations and recreational clubs with which the taxpayer is affiliated.

In analyzing whether a taxpayer uses a particular property as his principal residence,

we also have considered whether the taxpayer claimed a homestead tax credit on the

property. See Wickersham v. Commissioner, T.C. Memo. 2011-178. A property's

status as rental property does not prevent this Court from finding that the property is

the taxpayer's principal residence.  See Clapham v. Commissioner, 63 T.C. 505, 511-512 (1975).

For 2008 petitioner claimed a homestead exemption for the Highpoint Drive property.  On petitioner's assessment record, the Highpoint Drive property is identified as class 3 property.  Under Alabama law, class 3 property includes "[a]ll agricultural, forest, and residential property".  Ala. Code. sec. 40-8-1(a) (LexisNexis 2011).  "Residential property" includes "[r]eal property, used by the owner thereof exclusively as the owner's single-family dwelling."  Ala. Code. sec. 40-8-1(b)(6).  Class 3 property in Mobile County also includes a residential property where the owner not only uses the property as the owner's dwelling but also rents a room or portion of the property to a tenant.  See Howell v. Malone, 388 So. 2d 908, 914-915 (Ala. 1980).

For 2005, 2006, and 2007 petitioner claimed home mortgage interest deductions for the Highpoint Drive property.  Petitioner could properly claim a home mortgage interest deduction if he paid or accrued interest on indebtedness with respect to a qualified residence.  See sec. 163(h)(3)(A).  A "qualified residence" is defined as the taxpayer's principal residence, within the meaning of section 121, and one other residence that the taxpayer used as a residence during the taxable year.  See sec. 163(h)(4)(A)(i)(I) and (II).

In 2006 Whitney National Bank, E Trade Clearing LLC, and Chase Home Finance LLC mailed information returns[8] regarding petitioner's investment and interest income and mortgage interest expense to petitioner at the Highpoint Drive address.  In 2007 E Trade Clearing LLC, Scottrade, Inc., and Chase Home Finance LLC, mailed information returns[9] regarding petitioner's investment income and mortgage interest expense to petitioner at the Highpoint Drive address.[10]

Petitioner testified that during 2008 he resided with his parents at the Brandy Run Road property.[11]  Petitioner further testified that he did not use the Highpoint Drive property as his personal residence.[12]  The record includes copies of

---

[8]Whitney National Bank mailed to petitioner a Form 5498, IRA Contribution Information, and a Form 1099-INT, Interest Income.  E Trade Clearing LLC mailed to petitioner Forms 1099-B, Proceeds From Broker and Barter Exchange Transactions.  Chase Home Finance LLC mailed to petitioner Forms 1098, Mortgage Interest Statement.

[9]E Trade Clearing LLC and Scottrade, Inc., mailed to petitioner Forms 1099-B.  Chase Home Finance LLC mailed to petitioner Forms 1098.

[10]In addition to the Form 1099-B, Scottrade, Inc., mailed a Form 5498 to petitioner at the Brandy Run Road address.

[11]Petitioner also testified that he lived in a hotel during most of this time.

[12] In the absence of corroborating evidence, we are not required to accept petitioner's self-serving testimony.  See Shea v. Commissioner, 112 T.C. 183, 189 (1999).  To corroborate his testimony, petitioner introduced a document titled "Affidavit" signed by Rayford J. Richardson and Vicky H. Richardson stating that he lived with his parents until he married in 2009.  However, the document does not

(continued...)

petitioner's Forms 1040 for 2006 and 2007, both of which list his parents' home on Brandy Run Road as his home address.[13]

Petitioner owned the Highpoint Drive property during 2006-09. He claimed a homestead exemption and home mortgage interest deductions with respect to the Highpoint Drive property, and he received at least some of his bills and correspondence there. Petitioner did not introduce any credible evidence, such as testimony from his parents or from the tenant renting the Highpoint Drive property, to prove that he did not live at the Highpoint Drive property at any time between May 8, 2006, and May 9, 2009. He also failed to prove what address he listed on

---

[12](...continued)
include any statement that it was signed under penalty of perjury. In addition, petitioner introduced the testimony of Mr. Olsen that the Highpoint Drive property was a rental property and that, to the best of his knowledge, petitioner never resided there. When preparing petitioner's returns, however, Mr. Olsen did not make any kind of inquiry about petitioner's personal residence or review prior-year returns to verify his address during those years.

[13]Although petitioner received some correspondence at the Brandy Run Road address, this evidence is inconclusive given the fact that he also received correspondence at the Highpoint Drive address. See sec. 1.121-1(b)(2)(iv), Income Tax Regs. Although petitioner contends that he used the Highpoint Drive address for privacy reasons, we cannot accept his contention that he had a greater expectation of privacy with respect to the Highpoint Drive property when he testified that he was renting the property to a third party. Petitioner contends that he used the Highpoint Drive address to keep financial information private from his parents; however, in 2008 Chase Home Finance LLC mailed two Forms 1098 to him at the Brandy Run Road address.

his State tax returns, driver's license, automobile registration, or voter registration card.  See sec. 1.121-1(b)(2)(iii), Income Tax Regs.

Petitioner has failed to convince us that during 2007 and 2008 he did not use the Highpoint Drive property as his principal residence and that he was living with his parents at their home on Brandy Run Road.  Accordingly, we find that petitioner has failed to prove that he was an eligible first-time homebuyer for purposes of the FTHBC.  We sustain respondent's determination.

We have considered the parties' remaining arguments, and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.