T.C. Memo. 2020-25

UNITED STATES TAX COURT

ALVIN E. KEELS, SR., Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15853-16.                    Filed February 19, 2020.

Alvin E. Keels, Sr., pro se.

Timothy B. Heavner and Robert J. Braxton, for respondent.

**[\*2]** MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge: Respondent determined that petitioner had income tax deficiencies and is liable for additions to tax and penalties for taxable years 2012, 2013, and 2014 as follows:[1]

| Year | Deficiency | Addition to tax sec. 6651(a)(1) | Penalty sec. 6662(a) |
|---|---|---|---|
| 2012 | $117,659 | $29,415 | $23,532 |
| 2013 | 62,642 | 12,528 | 12,528 |
| 2014 | 98,732 | 4,932 | 19,746 |

After concessions,[2] the issues for decision are:

1. Whether petitioner has substantiated any deductions in amounts greater than respondent allowed. We hold that he has to the extent discussed below.

2. Whether the yearend values of petitioner's termination and extended termination payments from the State Farm Insurance Co. (State Farm)

---

[1]Section references are to the Internal Revenue Code in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar. Petitioner resided in Virginia when he filed the petition.

[2]Respondent concedes that petitioner may deduct: for 2012 bank fees of $1,030, legal and professional services of $1,434, wages of $56,404, and mortgage interest of $38,500; for 2013 bank fees of $1,220, legal and professional services of $3,688, taxes and licenses of $1,746, and wages of $42,750; and for 2014 bank fees of $1,679 and rent of $31,600.

[*3] nonqualified deferred compensation program are taxable income for the years at issue. We hold that they are not.

3. Whether petitioner had $167,223 of income from PayPal, Inc. (PayPal), for 2014. We hold that he did not.

4. Whether petitioner is liable for additions to tax for failure to timely file under section 6651(a)(1) and accuracy-related penalties under section 6662(a) for tax years 2012, 2013, and 2014 (years at issue). We hold that he is.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioner's State Farm Agency

Petitioner was an independent State Farm agent from 1985 through the time of trial. As a State Farm agent petitioner sells State Farm insurance products such as automobile and life insurance.

During the years at issue petitioner paid several individuals for various services, which he calls "contract labor". He made the following deductible contract labor payments: (1) to J. Horne, $3,165 in 2012, $2,825 in 2013, and $2,468 in 2014 for referrals; (2) to Peggy Scarborough, $1,164 in 2012 for referrals and bookkeeping services; (3) to his accountant, Len Brite, $500 in 2012 for a referral; and (4) to Chris Arrington, $38 in 2012 for answering the phone.

**[\*4]**  In 2013 petitioner relocated his State Farm agency.  He paid $800 to J. Harrold to assist him with the move.

B.    Jazz Legacy Foundation

Petitioner is an officer of the Jazz Legacy Foundation (JLF).  JLF was formed in fall 2013 to foster interest in jazz and to encourage jazz-related music education.  JLF sponsors concerts and an annual four-day fundraiser.

Petitioner used a PayPal account to receive payments for JLF.  He provided his personal taxpayer identification number to PayPal when he established that account.  Petitioner sold tickets for the JLF fundraiser in 2014.  Patrons sent their payments for the JLF fundraiser to the PayPal account.  For tax year 2014 PayPal sent petitioner a Form 1099-K, Payment Card and Third Party Network Transactions, showing that $167,223 in payments had been received by that account.

Petitioner did not report receipts of his PayPal account as income.  In the notice of deficiency (notice) respondent determined that money received by the PayPal account in 2014 was income to petitioner.

[*5] C.      Petitioner's 2012-14 Tax Returns and the Notice

1.      Petitioner's Tax Returns

Petitioner filed Forms 1040, U.S. Individual Income Tax Return, for 2012, 2013, and 2014.  Petitioner's Form 1040 for 2012 was due April 15, 2013, and was filed March 24, 2014.  Petitioner's Form 1040 for 2013 was due April 15, 2014, and was filed January 30, 2015.  Petitioner's Form 1040 for 2014 was due April 15, 2015, and was filed November 5, 2015.  He did not request extensions of time to file those returns.

Petitioner attached to his tax returns for 2012 and 2013 lists of expenses that he classified as "other expenses".  He had already deducted some of these expenses relating to utilities, advertising, and contract labor elsewhere on the returns for 2012 and 2013.

2.      The Notice of Deficiency

In the notice respondent disallowed most of petitioner's deductions claimed on Schedules C, Profit or Loss From Business, and some deductions claimed on Schedules A, Itemized Deductions, for the years at issue.

i.      Undisputed Deductions

Respondent conceded that petitioner may deduct the following amounts he reported on his 2012-14 tax returns:

**[*6]**

| Item | Amount allowed |
|---|---|
| **2012 Schedule C expenses** | |
| Rent | $37,300 |
| Returns and allowances | 6,001 |
| **2013 Schedule C expenses** | |
| Rent | 43,200 |
| Returns and allowances | 3,300 |
| Health insurance | 5,227 |
| **2013 Schedule A deduction** | |
| Donations | 3,500 |
| **2014 Schedule C expenses** | |
| Advertising | 20,212 |
| Car and truck | 18,144 |
| Commissions and fees | 800 |
| Insurance (other than health) | 3,900 |
| Legal and professional services | 2,800 |
| Repairs | 1,735 |
| Supplies | 7,201 |
| Tax and licenses | 3,631 |
| Travel | 4,804 |
| Meals and entertainment | 3,918 |
| Wages | 47,468 |

[*7]

2014 Schedule A deductions

| | |
|---|---|
| Mortgage interest | 41,000 |
| Donations | 489 |

ii.     Disallowed Deductions

The notice disallows the following deductions on petitioner's Schedule C: other expenses for 2012-14, utilities for 2012-14, office expenses for 2013 and 2014, interest--other for 2014, and contract labor for 2014.

The notice also disallows deductions for "Unidentified Expenses". The notice specifies no line items for these amounts. Examples of "unidentified expenses" are:

| Item | Amount deducted |
|---|---|
| 2012 Schedule C | |
| Advertising | $29,350 |
| Car and truck | 23,866 |
| Contract labor | 21,603 |
| Employee benefit programs | 154,780 |
| Interest--other | 15,600 |
| Legal and professional services (partially conceded by respondent) | 4,400 |
| Repairs and maintenance | 3,000 |
| Supplies | 20,300 |

| | |
|---|---|
| Travel | 3,853 |
| Deductible meals and entertainment | 2,150 |

2013 Schedule C deductions

| | |
|---|---|
| Advertising | 2,300 |
| Car and truck | 23,504 |
| Commissions and fees | 2,350 |
| Contract labor | 22,350 |
| Insurance (other than health) | 1,900 |
| Interest--Other | 16,300 |
| Pension and profit-sharing plans | 36,763 |
| Repairs and maintenance | 3,200 |
| Supplies | 3,897 |
| Taxes and licences (partially conceded) | 4,787 |
| Travel | 6,200 |
| Meals and entertainment | 1,439 |

One of these items for 2012 (employee benefit programs) and one for 2013 (pension and profit-sharing plans) are discussed infra Part D.

D.  State Farm Deferred Compensation Program

1.  General Description of the State Farm Deferred Compensation Program

When petitioner became a State Farm agent, he began participating in a deferred compensation program under which he will receive termination payments

**[*9]** for the first five years following the termination of his agency agreement and extended termination payments thereafter. The only information in the record from State Farm about the deferred compensation program is the following letter:

> We are writing in request to your email request regarding the Company's [State Farm's] reporting for 2012-2017.
>
> For tax years 2012-2017, State Farm Mutual Automobile Insurance Company reported income to * * * [petitioner]. Of this, $154,724 (2012), $36,763 (2013), [and] $28,124 (2014) * * * represents the yearend value of termination payments and extended termination payments (less the 2004 value).
>
> * * * [Petitioner] is an independent contractor for State Farm Mutual Automobile Insurance Company and its subsidiaries and affiliates (State Farm). Under the terms of his State Farm Agent's Agreement if he satisfied certain requirements, he will be entitled to termination and extended termination payments from State Farm. Assuming qualification, the termination payments begin at termination of the State Farm Agent's Agreements; extended termination payments would begin in the 61st month following termination of the State Farm Agent's Agreement.
>
> IRC 409A broadly defines nonqualified deferred compensation payments and provides the payments of nonqualified deferred compensation cannot begin until separation from service. Termination of the State Farm Agent's Agreement usually (but not always) results in a separation from service. * * * [Petitioner]'s agreement does not specify that termination payments will not begin until separation from service. Consequently, State Farm reported the 409A value of his termination and extended termination payments to him in Box 15b. He has not yet received any of these funds.

**[*10]** Neither party offered into evidence any Forms 1099-MISC or petitioner's State Farm agent's agreement referred to in the letter.

2. Petitioner's Reporting of the State Farm Deferred Compensation Program Amounts

In response to receiving at least one Form 1099-MISC, petitioner reported $440,537 of gross receipts or sales on his Schedule C for 2012. He labeled $154,724 of that amount as "State Farm Mutual" and that amount is also the 2012 yearend value of petitioner's termination and extended termination payments. Petitioner deducted that amount[3] on his Schedule C as an employee-benefit program expense.

Petitioner reported $324,567 of gross receipts on his Schedule C for 2013. It appears and we will assume that amount includes the $36,763 yearend value of his termination and extended termination payments for 2013. Petitioner deducted that amount as a pension and profit-sharing plan expense. The yearend value for petitioner's termination and extended termination payments for 2014 was $28,124. Petitioner neither deducted that amount nor included it in income for 2014.

---

[3]Petitioner deducted $154,780 on his Schedule C. The parties do not address the $56 difference.

[*11] 3.    <u>No Reference in Notice to Termination and Extended Termination Payment Balances, Deferred Compensation, Pension and Profit-Sharing Plan, or Employee Benefit Programs</u>

The notice does not refer to petitioner's yearend termination or extended termination payment balances, deferred compensation, pension and profit-sharing plan, employee benefit programs, or section 409A.  Respondent accepted petitioner's reporting as income of the yearend termination and extended termination payment balances for 2012 and 2013 but denied the deduction of those amounts as part of the denial of the deduction of "unidentified expenses".

Beneath the disallowed "unidentified expenses" respondent stated:

Since your 2012 and 2013 Federal Tax Returns were submitted on paper a portion of your Schedule C1 expenses could not be traced to a specific line item and have been grouped as "Unidentified Expenses." We will be able to better identify these individual expenses once you submit complete copies of these returns.  Since we could not verify whether these Unidentified Expenses were (a) ordinary and necessary to your business, and (b) paid, we have disallowed the amount shown.

It is not apparent how respondent meant these statements to apply to petitioner's deduction of the 2012 and 2013 yearend balances in his termination and extended termination payment accounts.  For example, the text questioning whether the "expense" was ordinary and necessary to petitioner's business and whether the "expense" was paid has no bearing on petitioner's reporting of his deferred compensation account balances.  Further, petitioner filed his returns in paper form

**[\*12]** and complete paper copies of the returns are in the record; thus it is unclear what is meant by the statement in the notice that "[w]e will be able to better identify these individual expenses once you submit complete copies of these returns". In any event, after the notice was sent respondent abandoned all of those points with respect to this issue and adopted a different basis for the tax treatment of those balances.

    4.    <u>First Mention of Section 409A</u>

Respondent did not mention petitioner's yearend termination or extended termination payment balances, deferred compensation, pension and profit-sharing plan, employee benefit programs, or section 409A in the notice, in respondent's pretrial memo, or otherwise before trial. At trial petitioner contended that respondent's determination in the notice that his deduction of the yearend balances in his termination and extended termination payment account for 2012 and 2013 was improper.

Respondent first referred to section 409A when petitioner offered the State Farm letter into evidence at trial. Respondent included arguments relating to section 409A in respondent's posttrial brief.

**[\*13]** E.    <u>Managerial Approval of Penalties</u>

More than one month before the notice was sent to petitioner a group manager signed Form 300, Civil Penalty Approval Form, approving an addition to tax under section 6651(a)(1) and an accuracy-related penalty under section 6662(d) for each year at issue.

OPINION

Our opinion is organized as follows:  (A) burden of proof, (B) petitioner's substantiation of his deductions, (C) tax treatment of petitioner's yearend termination and extended termination payment balances for 2012 and 2013, (D) PayPal account receipts, and (E) additions to tax and penalties.

A.    <u>Burden of Proof</u>

The Commissioner's determination in a notice of deficiency is generally presumed correct, and the taxpayer bears the burden of proving otherwise.  Rule 142(a); <u>INDOPCO, Inc. v. Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).  However, under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayer complies with all substantiation requirements in the Internal Revenue Code, introduces credible evidence with respect to factual issues relevant to ascertaining their liability, and cooperates with reasonable requests by the Commissioner for information,

[*14] documents, and meetings. Sec. 7491(a)(1). Petitioner does not contend that he has satisfied the requirements of section 7491 for shifting the burden of proof. See Rule 142(a)(2). Thus, except as discussed below in relation to the yearend termination and extended termination payment balances and the additions to tax and penalties, the burden of proof for all factual issues remains with petitioner.

B.     Petitioner's Substantiation

A taxpayer is required to substantiate expenses underlying each claimed deduction by maintaining records sufficient to establish the amount of the expense to enable the Commissioner to determine the correct tax liability. See sec. 6001; Higbee v. Commissioner, 116 T.C. 438, 440 (2001); sec. 1.6001-1(a), Income Tax Regs. In addition the taxpayer bears the burden of substantiating the amount and purpose of the claimed deduction. Higbee v. Commissioner, 116 T.C. at 440; Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), aff'd, 540 F.2d 821 (5th Cir. 1976). The fact that a taxpayer claims a deduction on his income tax return is not sufficient to substantiate the deduction. Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979); Roberts v. Commissioner, 62 T.C. 834, 837 (1974).

Petitioner's evidence comprised his (1) testimony, (2) credit card, bank, and PayPal account statements, and (3) canceled checks. Petitioner did not offer into evidence any receipts, invoices, bills or other statements showing what goods or

**[*15]** services he paid for by using his credit cards, checks, and PayPal accounts, nor did he offer into evidence any other books or records showing the purpose of each expense. Petitioner's checks and credit card statements show he paid the amounts thereon but do not show whether the payment was business related. For example, petitioner's utility expenses consist of payments for natural gas, electricity, water, and sewage, but the record does not show whether these services were for his business or his home.

Petitioner double deducted several expenses during the years at issue. Petitioner double deducted his utilities by including them as part of his other expenses and utilities. He double deducted moving expenses by including them under other expenses and contract labor, and he double deducted some advertising expenses by including them under advertising and other expenses.

During trial petitioner testified concerning various expenses he deducted on his 2012, 2013, and 2014 tax returns. Respondent points out that petitioner's testimony was "self-serving". Witness testimony could almost always be said to be "self-serving", but that factor alone is not a reason to automatically reject the evidence as unreliable. Lupyan v. Corinthian Colls. Inc., 761 F.3d 314, 320-321, 321 n.2 (3d Cir. 2014). We decide whether a witness' testimony is credible by relying on objective facts, the reasonableness of the testimony, the consistency of

[*16] the witness' statements, and the witness' demeanor. See Quock Ting v. United States, 140 U.S. 417, 420-421 (1891); Wood v. Commissioner, 338 F.2d 602, 605 (9th Cir. 1964), aff'g 41 T.C. 593 (1964); Pinder v. United States, 330 F.2d 119, 124-125 (5th Cir. 1964); Concord Consumers Hous. Coop. v. Commissioner, 89 T.C. 105, 124 n.21 (1987). We may discount testimony which we find to be unworthy of belief, see Tokarski v. Commissioner, 87 T.C. 74, 77 (1986), but we may not arbitrarily disregard testimony that is competent, relevant, and uncontradicted, see Conti v. Commissioner, 39 F.3d 658, 664 (6th Cir. 1994), aff'g and remanding 99 T.C. 370 (1992), and T.C. Memo. 1992-616.

Except as discussed below, much of petitioner's testimony was not sufficiently credible to substantiate his reported expenses. Petitioner's testimony was sometimes argumentative and was sprinkled with bluster and sarcasm. For example, when asked how he knows that his OfficeMax expenses were for items used at his State Farm office he stated: "The title of OfficeMax is enough to know that it's something for an office, more than likely." Petitioner provided a check made payable to Cape School, but the check does not show the purpose. When asked if the purpose was for business petitioner stated (addressing respondent's counsel): "If you want to do some research, you can look up Cape School, and they'll tell you what they do." Petitioner stated that he did not bring all of his

**[*17]** credit card statements to avoid having a pile of papers at the trial. When respondent asked why petitioner relied on a bank statement to show he had paid electric bills instead of the electrical bills themselves, petitioner said if requested he can provide the bills. However, petitioner was unresponsive when respondent requested the underlying bills on August 25, 2017, and again when respondent file a motion on December 29, 2017, seeking the documents.

Petitioner initially testified that he used his American Express credit card solely for his State Farm agency during the years at issue, but later he said that he used it "mostly" for business. The American Express account statements in the record appear to include several purchases for personal purposes, such as purchases from sporting goods stores, restaurants, gas stations, and a car dealership.

Petitioner testified that a bank account in his name was his State Farm operating account, but he also appears to have used that account for personal expenses such as payments for a doctor, gas stations, and several charges to Neiman Marcus. Petitioner testified that one of those charges to Neiman Marcus may have been for a client.

Petitioner's bank statements show payments he made to airlines and hotels, but the record does not show who traveled or the purpose of the travel. He

**[*18]** provided no receipts or other records relating to meals he claimed that he paid for clients or potential clients. For 2012 he deducted $23,866 in car and truck expenses. To calculate that amount he included all of the 37,625 miles he drove that year and testified that each of those miles was for business. The record does not show how many miles he drove for business or to and from work.

Therefore, except for the issues discussed below and conceded by respondent, petitioner did not meet his burden of proof, and the expense deductions disallowed by the notice are sustained.

Petitioner credibly testified about some of his reported contract labor expenses. He sufficiently substantiated the following expenses: referral fees paid to J. Horne ($3,165 for 2012, $2,825 for 2013, and $2,468 for 2014), referral fees and bookkeeping services paid to Peggy Scarborough ($1,164 for 2012), a referral fee to Len Brite ($500 for 2012), and a payment to Chris Arrington for answering the phone ($38 for 2012). In addition petitioner testified, and we find, that he paid $800 to J. Harrold in fall 2013 as a moving fee.

**[\*19]** C.     Nonqualified Deferred Compensation Payments for 2012-14

    1.     Positions of the Parties Regarding the Deferred Compensation Balances

Respondent contends for the first time in the posttrial brief that under section 409A the yearend termination and extended termination payment balances in petitioner's State Farm deferred compensation program are income to him of $154,724 for 2012, $36,763 for 2013, and $28,124 for 2014.  Petitioner argued at trial that he is not taxable on these amounts because he had not received any of these payments and would not receive them until the termination of his State Farm agency agreement.  Neither party offered into evidence any Forms 1099-MISC reporting these yearend balances or the deferred compensation program agreement.

    2.     Section 7522

The basis for tax due in a notice of deficiency must be stated in the notice. Sec. 7522(a) and (b)(1).  Failure to state the basis does not invalidate the notice, sec. 7522(a), but the burden of proof shifts to the Commissioner, Shea v. Commissioner, 112 T.C. 183, 197 (1999).  In Shea we said that the assertion of a new basis after issuance of a notice is similar to raising new matter on which the Commissioner bears the burden of proof.  Id. at 196-197.

**[*20]** In Shea the Commissioner issued a notice of deficiency which disallowed various Schedule C deductions. Id. at 191. The only basis provided in the notice for disallowing those deductions was that the taxpayer had not substantiated them. Id. However, in the posttrial brief the Commissioner argued that the deduction should be disallowed solely on the basis of section 66(b).[4] Id. at 190-191. We said that "it appear[ed] * * * [the Commissioner] gave no thought to * * * section 66(b) when the notice of deficiency was prepared." Id. at 192. We held that the Commissioner bore the burden of proof because the Commissioner had raised a new basis for disallowing the deductions.[5] Id. at 197.

Respondent's late assertion of the section 409A theory in this case closely mirrors the facts in Shea. The notice disallows petitioner's deduction for "unidentified expenses" of $278,933 for 2012 and $131,947 for 2013. The notice states that the unidentified expenses were disallowed because respondent "could not verify whether these Unidentified Expenses were (a) ordinary and necessary to

---

[4]Sec. 66(b) establishes that the Secretary may disregard community property laws in certain situations and does not address substantiation.

[5]In Shea v. Commissioner, 112 T.C. 183 (1999), the taxpayers were on notice before trial that the Commissioner would rely upon sec. 66(b); but because the pretrial notice did not provide sufficient warning, the Commissioner bore the burden of proof nonetheless. The facts are even more favorable to petitioner in our case because he did not have prior warning that respondent would rely upon sec. 409A.

[*21] * * * [petitioner's] business, and (b) paid". The notice did not identify any issues relating to deferred compensation or section 409A. Because the notice did not include the basis on which respondent relies, respondent bears the burden of proof on that issue.

3.    Section 409A

To prevail under section 409A, a taxpayer must show all three of the following: first, that distributions from the plan may not occur before the taxpayer's separation from service, disability, death, an unforeseen emergency, or a change in ownership of the corporation, sec. 409A(a)(2)(A)(i)-(vi); second, that the plan does not permit acceleration of benefits except to the extent provided by regulations, sec. 409A(a)(3); and third, that the election to deferred compensation must be timely made, sec. 409A(a)(4)(B)(i). These requirements do not apply if the benefits are subject to substantial risk of forfeiture or were previously taxable. Sec. 409A(a)(1)(A)(i).

For respondent to meet the burden of proof respondent must show that the plan fails to include any one of the three requirements above, that petitioner does not have a substantial risk of forfeiture, and that petitioner was not previously taxed on the deferred compensation. The record does not show whether petitioner's plan with State Farm meets the requirements of section 409A. The

[*22] plan document probably provides these details, but it is not in the record; neither is any Form 1099-MISC sent to petitioner by State Farm. The State Farm letter does not include those details. Thus, respondent has not shown that the plan fails to meet at least one of the requirements of section 409A or whether there is a substantial risk of forfeiture. Therefore, respondent did not meet the burden of proving that section 409A applies, and on this record petitioner is not taxable on the yearend balances of his termination and extended termination accounts for the years at issue.

D.    PayPal

Respondent determined that petitioner had $167,223 in additional income for 2014 from a PayPal account registered in petitioner's name. Petitioner testified that in 2014 the account was used to receive money from persons buying tickets for a JLF fundraiser and that he had provided his taxpayer identification number to PayPal when the PayPal account was established. Petitioner sponsored some jazz concerts before JLF was founded in fall 2013, but it appears that the PayPal receipts in 2014 belonged to JLF, not to petitioner. Thus we conclude that none of the $167,223 was income to petitioner.

The record is murky regarding petitioner's use of one or more PayPal accounts before JLF was established. Petitioner may have used a PayPal account

**[\*23]** to pay some of his personal expenses. Because of our holdings above relating to the substantiation of his deductions, petitioner may not deduct expenses, if any, paid through PayPal.

E.  Additions to Tax and Penalties

Respondent determined that petitioner is liable for additions to tax for failure to timely file under section 6651(a)(1) and accuracy-related penalties under section 6662(a) for the years at issue. The Commissioner bears the burden of production for these additions to tax and penalties. Sec. 7491(c); Higbee v. Commissioner, 116 T.C. at 446-447. Once the Commissioner meets this burden, the taxpayer has the burden of proving that any affirmative defenses apply, such as reasonable cause. Higbee v. Commissioner, 116 T.C. at 446-447.

Section 6651(a)(1) imposes an addition to tax when a taxpayer fails to timely file a return unless the taxpayer establishes that the failure was due to reasonable cause and not willful neglect. Respondent has shown that petitioner's return for each year at issue was filed late. Petitioner did not show any reasonable cause for his failure to timely file the returns. Thus, he is liable for the additions to tax under section 6651(a)(1) for 2012, 2013, and 2014.

Section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20% of the portion of an underpayment of tax attributable to a substantial

[*24] understatement of income tax. An understatement of income tax is substantial if it exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A). Respondent has shown that petitioner has substantial understatements. An accuracy-related penalty does not apply, however, to any portion of an underpayment of tax if the taxpayer shows he or she acted with reasonable cause and in good faith with respect to that portion. Sec. 6664(c)(1); sec. 1.6664-4(b)(1), Income Tax Regs. Petitioner did not show he had reasonable cause for the understatements.

Section 6751(b)(1) provides that the Commissioner must show that there was timely written supervisory approval of the initial section 6662 penalty determination. See also sec. 7491(c); Frost v. Commissioner, 154 T.C. __, __ (slip op. at 20) (Jan. 7, 2020) (requiring the Commissioner to produce evidence of penalty approval as part of the initial burden of production under section 7491(c)); Clay v. Commissioner, 152 T.C. 223, 249 (2019); Graev v. Commissioner, 149 T.C. 485, 493 (2017), supplementing and overruling in part 147 T.C. 460 (2016). Respondent's burden under section 6751(b)(1) was met when he produced a Form 300 signed by a group manager, which occurred over one month before the notice was sent to petitioner. Thus, petitioner is liable for accuracy-related penalties under section 6662(a) for 2012, 2013, and 2014.

**[\*25]**  To reflect the foregoing,

Decision will be entered under

Rule 155.
