T.C. Memo. 2021-120

UNITED STATES TAX COURT

JAMES R. MORRIS AND LORI A. EGBERS-MORRIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15012-18.                    Filed October 25, 2021.

Robert C. Webb, for petitioner James R. Morris, and Christopher S. Egan,
for petitioner Lori A. Egbers-Morris.

Timothy A. Froehle, Gorica B. Lakic, and Sarah E. Sexton Martinez, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GOEKE, Judge:  Respondent issued separate notices of deficiency to
petitioners determining deficiencies, additions to tax for failure to file timely and

[*2] failure to pay timely under section 6651(a)(1) and (2), and additions to tax for failure to pay estimated tax under section 6654 for taxable years 2015 and 2016.[1] Before the trial the parties filed a stipulation of settled issues for the amounts of petitioners' joint deficiencies for each year at issue. Unresolved is their liability for the additions to tax. We hold them liable.

FINDINGS OF FACT

Petitioners, husband and wife, resided in Illinois when they timely filed their petition. Petitioner husband is a successful businessman and owned multiple businesses including Morris Packaging, LLC (Morris Packaging), Morris Converting, LLC (Morris Converting), and Roar Food Group, LLC. During the years at issue he made most of the day-to-day decisions for these businesses. Petitioners each owned shares in S corporations, petitioner husband in Heartland Supply Co. and petitioner wife in Commercial Bag Co. The ownership percentages of the S corporations are not in the record.

In 2013 petitioner husband expanded his packaging business into the manufacture of converted packaging and formed Morris Converting. He

---

[1] All section references are to the Internal Revenue Code (Code), title 26 U.S.C., in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. Some amounts are rounded.

[*3] constructed a production facility and invested millions of dollars in machinery and equipment which he financed at least in part through intercompany transactions. Morris Converting expanded rapidly and at the time of trial had about 175 employees.

Petitioners' returns for the years at issue were prepared by Dennis Knobloch, a certified public accountant (C.P.A.), of Striegel, Knobloch & Co. (SKC). Mr. Knobloch prepared petitioners' joint returns from 2000 to 2018. Petitioner-husband also used SKC for his businesses' accounting although he employed a receptionist who performed some bookkeeping. The businesses used the computer program QuickBooks during the years at issue. SKC had full access to the businesses' bookkeeping. Petitioner-husband relied on SKC to perform monthly reconciliations of his business records, and SKC could input and modify bookkeeping entries as necessary without petitioner-husband's approval. A different CPA firm prepared the S corporation returns. Petitioner-husband realized after the years at issue that he needed to change his accounting system because of the growth of his businesses and expansion into manufacturing. He has since expanded the internal accounting staff, employed a chief financial officer, and engaged a new CPA firm to prepare tax returns.

[*4] Around 2016 respondent began an audit for petitioners' 2013 and 2014 taxable years which involved issues relating to the capital expenses incurred by Morris Converting. The date when respondent opened the audit is not in the record. Petitioners did not timely file a return for 2014 and had not filed a return when the audit began. SKC represented petitioners during the audit. Petitioner-husband understood that Mr. Knobloch was concerned about filing the 2015 return during the audit and duplicating errors on the 2015 return, which had to be signed under penalties of perjury.

Mr. Knobloch recommended to petitioner-husband that petitioners settle the years under audit. Respondent received petitioners' 2014 return on November 7, 2017. It reported tax of $27,852 and an overpayment of $24,080. Respondent closed the audit on January 8, 2018. The record does not disclose the adjustments for 2013. Petitioner-husband understood that the adjustments for 2014 were minor.

Petitioners timely requested extensions for filing their 2015 and 2016 returns but did not file them by the extended due dates. Petitioners did not make a payment of tax with the request for an extension for the 2015 return. They did not make any estimated tax payments during the years at issue and did not have tax withheld from their paychecks during 2015. Petitioner-husband had a minimal amount of tax withheld from his wages during 2016. Petitioner-wife had

[*5] withholding credits of $10 and $11 during 2015 and 2016, respectively. For 2015 and 2016 petitioners, respectively, had ordinary income from their S corporations of over $2.2 million and $3 million. During the audit for 2013 and 2014 the revenue agent asked petitioners to provide their untimely 2015 return to him by May 15, 2017.

Respondent prepared substitutes for returns for each petitioner for 2015 and 2016 with the filing status married filing separately. On December 19, 2017, respondent signed Form 13496, IRC Section 6020(b) Certification, for each year with respect to petitioner-wife, and on March 12, 2018, with respect to petitioner-husband. On April 28, 2018, respondent received petitioners' Form 1040, U.S. Individual Income Tax Return, for 2015 showing total tax of $598,926, and on July 30, 2018, for 2016, showing total tax of $1,691,853. Petitioners paid $469,000 with their 2015 return and paid an additional $210,000 toward the tax owed for 2015 by July 1, 2019. They did not make a payment with their 2016 return. On May 3, 2018, respondent issued a notice of deficiency for 2015 and 2016 to each petitioner that determined deficiencies on the basis of the substitutes for returns. The parties have stipulated that petitioners had joint deficiencies of $599,469 and $1,691,959 for 2015 and 2016, respectively. These amounts reflect small

**[\*6]** adjustments from the tax that petitioners reported as owed on their 2015 and 2016 returns.

OPINION

I.      Section 6651(a) Additions to Tax

Section 6651(a)(1) and (2) imposes additions to tax for failure to file a return and failure to pay the amount shown as tax on a return, respectively, on or before the date prescribed unless the taxpayer proves that such failures are due to reasonable cause and not due to willful neglect.  See sec. 301.6651-1(c), Proced. & Admin. Regs.  Willful neglect is defined as a "conscious, intentional failure or reckless indifference."  United States v. Boyle, 469 U.S. 241, 245 (1985). Reasonable cause for a failure to file exists where the taxpayers exercised ordinary care and prudence but were nevertheless unable to file the return by the due date. Id. at 246.  It exists for a failure to pay where the taxpayer exercised ordinary business care and prudence in providing for payment but was nevertheless either unable to pay the tax or would have suffered undue hardship if he had paid it.  Sec. 301.6551-1(c)(1), Proced. & Admin. Regs.  A substitute for return prepared pursuant to section 6020(b) is treated as the taxpayer's return for purposes of the section 6651(a)(2) addition to tax.  Sec. 6651(g)(2); Winslow v. Commissioner, 139 T.C. 270, 275 (2012).

**[\*7]**   Respondent has met his burden to establish that the 2015 and 2016 returns were not filed timely and tax shown as owing on the substitutes for returns was not paid timely.  Sec. 7491(c).  Petitioners have the burden of proving that the untimely filings and untimely payments were due to reasonable cause.  Whether reasonable cause exists is a question of fact answered on the basis of the individual circumstances of each case.  Boyle, 469 U.S. at 249 n.8.  Good-faith reliance on professional advice may constitute reasonable cause.  Id. at 250-251.  However, taxpayers have the burden of filing a return and paying tax owed, and they cannot delegate that duty to an agent or accountant.  Id. at 249-252.  The Supreme Court has stated that "one does not have to be a tax expert to know that * * * taxes must be paid when they are due."  Id. at 251.

A.     Failure To File Timely

Taxpayers may demonstrate reasonable cause for failing to file a return timely through their good-faith, reasonable reliance on the advice of an independent, competent tax professional that no return was required to be filed.  Id. at 250-251.  Reliance on such advice "do[es] not sanction an abdication of responsibility for the timely filing of a return admittedly due."  United States v. Kroll, 547 F.2d 393, 397 (7th Cir. 1977); see also Fleming v. United States, 648

**[\*8]** F.2d 1122, 1125-1126 (7th Cir. 1981).[2] The Code provides an unambiguous deadline, and "no special training or effort [is required] to ascertain \* \* \* that it is met." Boyle, 469 U.S. at 252.

Petitioners were not advised that they were not required to file a return. The alleged advice was to delay filing while audits for prior years were completed. Allowing such a basis for reasonable cause would make timely filing optional for any taxpayer under audit. Petitioners were aware that they had a duty to file a return timely and consciously failed to file. It is well settled that taxpayers must file timely returns using the best information available to them and may file amended returns if necessary. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982).

Petitioners argue that Mr. Knobloch advised that filing while an audit for earlier years was ongoing could subject them to perjury charges, which they argue involve a question of law. They also argue that they lack the education and experience to prepare and file their returns themselves because of complicated issues relating to their businesses. Mr. Knobloch did not testify at trial, and there is no evidence in the record except for petitioner-husband's testimony of Mr.

---

[2] This case is appealable to the Court of Appeals for the Seventh Circuit. See sec. 7482(b)(1).

**[\*9]** Knobloch's alleged advice. On brief petitioners refer to correspondence from Mr. Knobloch providing this advice, but no such correspondence is in the record. We need not accept a taxpayer's testimony that is self-serving and uncorroborated by other evidence, and we do not do so here. See, e.g., <u>Shea v. Commissioner</u>, 112 T.C. 183, 189 (1999).

Petitioner-husband's testimony about Mr. Knobloch was vague and nonspecific. He testified that Mr. Knobloch "brought up" perjury and indicated that Mr. Knobloch's concerns related to the tax treatment of capital expenditures incurred from the startup of Morris Converting. It seems plausible to us that Mr. Knobloch may have informed petitioners that resolution of the capital expenditures issues might affect reporting for 2015 and 2016. However, such advice does not excuse petitioners' failure to file or their failure to pay tax on their income unrelated to Morris Converting. Nor would we find petitioners' reliance on any such advice reasonable under the circumstances of this case.

The record does not establish the date when respondent opened the audit, and it is possible that the extended due date for the 2015 return had already passed by the time respondent began the audit. During the audit the revenue agent sought the 2015 return and asked petitioners to provide it by May 15, 2017. Petitioners did not file the 2015 return for nearly a year more. The addition to tax for failure

**[\*10]** to file timely reaches its statutory maximum after four months of nonfiling. Even if we were to find petitioner-husband's testimony about Mr. Knobloch's advice credible, it was not reasonable for petitioners to continue to rely on Mr. Knobloch's alleged advice when the revenue agent was telling them to file the return. Petitioners filed their 2016 return more than six months after the audit closed and only after respondent issued notices of deficiency to them. The untimely filing of petitioners' 2014 return on November 7, 2017, over 2-1/2 years after its prescribed due date, also causes us to doubt petitioners' argument that they relied on their CPA to delay filing their 2015 and 2016 returns. Under the totality of the facts and circumstances of this case, we find that petitioners have not established reasonable cause for their untimely filing for either year at issue.

B.    Failure To Pay Timely

For the section 6651(a)(2) addition to tax for failure to pay timely, petitioners argue that they initially believed that they would not owe tax for 2015 and 2016 because of the millions of dollars that they spent to start Morris Converting. They understood from Mr. Knobloch that petitioner-husband's businesses would have a tax loss for 2015. He reported losses from three sole proprietorships on Schedules C, Profit or Loses From Business, for 2015, and Morris Packaging and Morris Converting also reported losses for 2016. Petitioners

**[\*11]** do not specifically address the reasons for their untimely payment of their 2016 tax.

We are not persuaded by petitioners' argument. While petitioners have not presented documentation of Mr. Knobloch's alleged advice, more significant for our decision is that petitioners did not have Federal income tax withheld from their wages or pay tax on the substantial amounts of income from their S corporations unrelated to the business expansion of Morris Converting. It is unreasonable for petitioners to have believed that they would not owe tax on this income, and Mr. Knobloch's alleged advice does not explain why petitioners did not have tax withheld from their wages or pay tax on the S corporation income. According to the parties' stipulation, petitioners' tax for 2015 was over $500,000. Petitioners did not take any steps to ensure timely payment for either year at issue, and they did not exercise ordinary business care and prudence. Nor have they asserted or offered any evidence that they were unable to pay the tax owed on the substitutes for returns or that payment would cause them undue hardship.

In conclusion, petitioners have not established to our satisfaction that reasonable cause exists for their failure to file or pay timely, and we sustain the additions to tax under section 6651(a)(1) and (2) for both years at issue.

[*12] II.      Section 6654(a) Addition to Tax

Section 6654(a) imposes an addition to tax where prepayments of tax during the course of the taxable year, either through withholding or by making estimated quarterly tax payments, do not equal the percentage of total liability required under the statute.  Taxpayers have an obligation to pay estimated tax when they have a required annual payment for the taxable year.  Sec. 6554(d)(1)(A); see id. subpara. (B) (defining required annual payment).  The addition to tax is mandatory unless a statutory exception applies.  Id. subsecs. (a), (e); Recklitis v. Commissioner, 91 T.C. 874, 913 (1988).  There is no general exception for reasonable cause or absence of willful neglect.  Grosshandler v. Commissioner, 75 T.C. 1, 21 (1980).

Respondent has the burden of production with respect to petitioners' liability for the section 6554(a) addition to tax and has met that burden by producing evidence to enable the Court to conclude that petitioners had required payments for both years and failed to make them.  See sec. 7491(c); Wheeler v. Commissioner, 127 T.C. 200, 211 (2006), aff'd, 521 F.3d 1289 (10th Cir. 2008).  They do not contend that they qualify for any of the exceptions listed in section 6654(e).  Accordingly, they are liable for the section 6654(a) addition to tax for both years.

**[*13]** In reaching the foregoing holdings, we have considered all the parties' arguments, and, to the extent not addressed herein, we conclude that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.